NORTH STAR BOOT & SHOE COMPANY *vs.* JOSEPH W. LADD, and Garnishee, and Claimant.

### August 11, 1884.

**Garnishment—Burden of Proof on Claimant.**—The *affirmative* in maintaining his right to garnished property is upon the "claimant," who comes into garnishment proceedings under Gen. St. 1878, c. 66, § 174.

**Same—Insurance Money—Claimant's Chattel Mortgage Attacked for Fraud.**—Where the amount secured by a fire-insurance policy upon A's goods, running to A, is made payable to B as his interest may appear, (that interest being represented by a chattel mortgage,) and a loss occurs, a creditor of A may properly garnish the insurance money in the hands of the insurer, and in the garnishment proceedings, into which B has come as a "claimant," such creditor may properly attack and call in question B's mortgage as being fraudulent and void as to A's creditors.

Appeal by James A. Lovejoy, as claimant in an action against Joseph W. Ladd, defendant, and the Shoe & Leather Ins. Co., garnishee, from an order of the district court for Hennepin county, *Koon*, J., presiding, refusing a new trial after verdict for plaintiff.

*C. H. Benton*, for appellant.

*Lane & Dodge, J. M. Shaw* and *A. B. Jackson*, for respondent.

BERRY, J. The Shoe & Leather Insurance Company insured defendant Ladd against loss by fire to the amount of $1,000, upon a

stock of goods owned by him, and upon its face the policy made "the loss (if any) payable to James A. Lovejoy, as his interest may appear." On January 20, 1883, Ladd gave Lovejoy a chattel mortgage on the goods, ostensibly to secure four promissory notes held by Lovejoy against him. The mortgage was filed February 23, 1883. On February 8, 1883, the goods were totally destroyed by fire, and prior to May 19th following the loss was adjusted. On May 19th, plaintiff, as a creditor of Ladd, garnished the insurance company, which, upon disclosure, admitted an indebtedness of $1,000 on the policy, further disclosing the fact that the loss was, by the terms of the policy, made payable to Lovejoy, and that he claimed it. Under Gen. St. 1878, c. 66, § 174, Lovejoy appeared as a claimant of the fund in the garnishee's hands, and filed a formal complaint, setting up a claim to such fund under and by virtue of the chattel mortgage. The plaintiff answered, alleging, in substance, that the mortgage was fraudulent as to Ladd's creditors, and that both it and the notes mentioned were without consideration. Lovejoy replied, denying these allegations of the answer.

Upon the trial of the issue thus raised, the court below properly ruled that the affirmative was upon Lovejoy. The statute (section 174, *supra*) under which Lovejoy came into the proceedings provides that the claimant may appear and "*maintain* his right." We see no substantial distinction between this case and *Donnelly* v. *O'Connor*, 22 Minn. 309, where the affirmative was held to be upon the claimant, to whom (as here) a "loss" was made payable to the extent of his interest. The *indorsement upon the policy*, by which in that case the "loss" was made payable to the claimant, is of the same effect as the clause *in the policy* in this case, by which the "loss" is made payable to Lovejoy. Ladd was *the insured*, notwithstanding this clause, just as was the party to whom the policy ran in the case cited.

On the part of the plaintiff and the court below, this case was tried and submitted to the jury upon the theory that the question was whether, as respected the plaintiff, the chattel mortgage was valid; or, as otherwise stated, whether, as respected the plaintiff, the mortgage was executed in good faith, and not for the purpose of defrauding Ladd's creditors. This theory was entirely correct. The plain-

tiff was a creditor of Ladd on account of the claim sued for in this action at the time when the chattel mortgage was made. The "loss" secured by the policy belonged to Ladd, and upon the adjustment was an "indebtedness" of the insurance company to him, except to the extent of the *interest* of Lovejoy under his chattel mortgage. If Lovejoy had no such interest as against the plaintiff, for the reason that, as to plaintiff, as one of Ladd's creditors, the mortgage was void as having been given for the purpose of defrauding Ladd's creditors, and not in good faith, then the "indebtedness" of the insurance company to Ladd was garnishable by the plaintiff. And by the garnishment of this indebtedness (as it would have done by an attachment of the mortgaged property if in existence) the plaintiff put itself in a position to question the validity of the chattel mortgage. *Braley* v. *Byrnes,* 21 Minn. 482; *Tolbert* v. *Horton,* 31 Minn. 518. The garnishment is, in effect, an attachment of the "indebtedness" of the garnishee to the defendant. Though, technically speaking, it may not give a "specific lien" upon such indebtedness, its effect in conferring upon the plaintiff a specific right (over and above that of a mere general creditor) to the indebtedness for the payment of his claim, is substantially analogous to that acquired by an attachment of tangible property. This disposes of what we regard as the most important question of law involved in this case.

The range of inquiry as to the relations between Ladd and Lovejoy which the court below permitted, was wide and searching, but in cases of this character much latitude in that respect is allowable and often absolutely necessary; and although in this case, as in many others, much of what is elicited is of little value, we find no substantial error in the conduct of the trial in this regard.

In respect to evidence raising a doubt in the minds of the jury, it must be confessed that the charge is a little loose, but we think this can hardly be assigned as error, because the court did not assume to charge directly and affirmatively upon the effect of the doubt, as the appellant should have asked it to do if he apprehended prejudice.

The court properly instructed the jury that the burden was upon Lovejoy to prove that his mortgage was given in good faith, and not for the purpose of defrauding Ladd's creditors. *Braley* v. *Byrnes,*

25 Minn. 297; *Tolbert* v. *Horton, supra.* In order to show the "interest" upon which the payability of the "loss" to him depended, Lovejoy must establish his chattel mortgage; and, possession of the mortgaged property having been retained by the mortgagor, this must be done by assuming the burden of proof above mentioned. Cases *supra.*

The only remaining point made by the claimant to which we deem it necessary to advert, is that the verdict is not justified by the evidence. And upon this we have only to remark that in cases of this kind, involving questions of good faith and intention to defraud creditors, the evidence is, in the nature of things, and from the constitution of human nature, almost always largely, if not altogether, circumstantial. The jury is called upon to make up a judgment from comparatively slight circumstances,—from ear-marks, and from the "atmosphere" of the transaction called in question. Failure to explain facts more or less calculated to excite suspicion, or unsatisfactory explanations of them, are often of considerable significance. In view of these and kindred considerations, whatever might have been our judgment as to the legitimate effect of the evidence in this case, we are of opinion that there was evidence sufficient and competent to enable the jury, in the exercise of their authority over questions of fact, to find 'that the chattel mortgage was not made in good faith, but with intent to defraud Ladd's creditors, of whom plaintiff was one.

Order affirmed.