MONTANA NATIONAL BANK, RESPONDENT, *v.* MERCHANTS NATIONAL BANK, ET AL., APPELLANTS.

(Submitted May 18, 1897. Decided June 7, 1897.)

*Attachment—Garnishment—Effect Of.*

GARNISHMENT—*Effect of.*—By attaching a debt due to the defendant, a plaintiff acquires an inchoate right to a lien upon the property of the garnishee.

WHERE an attachment has been levied upon a debt due the defendant, and an action is subsequently brought against the garnishee, who is insolvent, by a creditor who knows of the attachment, a court of equity will interfere to protect the inchoate right obtained by the attachment and will divide the property of the garnishee between the claimants pro rata.

*Appeal from District Court, Lewis and Clarke County. Henry N. Blake, Judge.*

ACTION by the Montana National Bank against the Merchants' National Bank, the Daily Journal company, the

Journal Publishing company and Charles M. Jeffris. From a judgment in favor of plaintiff, and an order denying a new trial, defendants appeal. Modified.

Statement of the case by the justice delivering the opinion.

The facts in this case are substantially as follows: On November 9, 1892, the Montana National Bank instituted an action in the district court of Lewis and Clarke county against the Journal Publishing company for a debt of $26,424.15. On the same day a writ of attachment was issued in the suit, and pursuant to it the sheriff served notice upon the Daily Journal company for the purpose of attaching the sum of $8,939.89, a debt due from said Daily Journal company to said Journal Publishing company. The Montana National Bank obtained judgment against the Journal Publishing company for the amount it sued for on November 29, 1892. Subsequent to the service of the writ of attachment aforesaid, and with notice thereof, the Merchants' National Bank sued said Daily Journal company for the sum of $25,307.43, and on the same day procured a writ of attachment, and caused the sheriff of Lewis and Clarke county to seize all the property of said Daily Journal company. On November 22d the Merchants' National Bank recovered judgment against said Daily Journal company for the said sum alleged to be due it, and on the same day caused a writ of execution to be issued and placed in the hands of the sheriff. The sheriff levied an execution on all the property of the Daily Journal company, and sold the same on December 1, 1892, realizing the sum of $21,000. On December 1, 1892, the Montana National Bank brought a suit against the Merchants' National Bank, the Daily Journal company, The Journal Publishing company, and the sheriff of Lewis and Clarke county, for the purpose of having applied on its judgment against the Journal Publishing company the amount of the indebtedness from the Daily Journal company to the Journal Publishing company which it had attached.

An answer was filed.     The case was tried to the court without a jury.     From a judgment in favor of the Montana National Bank, and an order denying a motion for a new trial, the defendants appeal.

*McConnell, Clayberg & Gunn,* for Appellants.

*H. G. McIntire,* for Respondent.

BUCK, J.—It is claimed by appellants that the complaint of respondent does not state a cause of action, by reason of its failure to allege that any attachment had ever been levied on any indebtedness due from the Daily Journal company to the Journal Publishing company.     Appellants contend that the complaint shows that only property and credits were attached by respondent, and not debts.     The complaint is somewhat defective in the allegations as to the attachment of an indebtedness, but upon the trial it was stipulated between appellants and respondent that no claim was made in the action except on account of the attachment of the alleged indebtedness of the Daily Journal company to the Journal Publishing company.     The main issue of fact on the trial was as to whether there was any such indebtedness or not.     Having entered into this stipulation, and the issue aforesaid having been tried, we are satisfied that appellants are in no position to take advantage of the alleged defect in the complaint.     It would not be fair to allow them to raise this point.     Moreover, the complaint alleges ''that at the time of the service upon it of the writ of attachment and notice, the Daily Journal company owed the Journal Publishing company the sum of $9,039.89, and that said sum, so owing from said Daily Journal company to said Journal Publishing company, and so as aforesaid by said plaintiff attached and garnished, is still owing and wholly unpaid.''

We proceed at once to the main issue of law involved.     Appellants state their position as follows :     ''Under our statutes, no lien is created, by virtue of an attachment, either upon the property of the garnishee or upon the property of the defendant in the garnishee's possession.''

Neither the words "garnish," ' garnishment," "garnisher," or "garnishee" appear in the Montana attachment statutes.    The sheriff is commanded by the writ of attachment to attach the property of the defendant, whatsoever its character—whether capable of actual possession or of constructive seizure only.    But we will use the terms aforesaid for convenience in this opinion.

As to a chattel capable of manual delivery in the possession of a garnishee, we cannot agree with appellants that no lien results from the garnishment.    An inchoate lien or right is acquired by garnishment as to such chattel.    See *Reed* v. *Fletcher* (Neb.) 39 N. W. 437, and *Northfield Knife Co.* v. *Sharpleigh,* Id. 788 ; also *Focke* v. *Blum,* 82 Tex. 436, 17 S. W. 770, and *Smith* v. *Bridge Co.,* 13 Ill. App. 572.

In this case, however, a debt was garnished, and just what right in connection with the property of the garnishee was acquired by virtue of the garnishment is a question of difficulty. Is the garnisher of a debt substituted only to the right of the creditor of the garnishee, or does he acquire, by virtue of the garnishment, a right different in the power of enforcement from such creditor's right ?    To hold that he does not would be almost to declare the statute permitting a garnishment of a debt a nullity.    If there is a mere substitution, the garnishee, particularly if insolvent, can ignore the garnishment by disposing of all his property, and thereby absolutely defeat any practical gain from the process.    On the other hand, it would not do to hold that, by the mere service of the notice of attachment, a specific lien is created upon any property of the garnishee.    The garnishee's right to deal lawfully with his own property cannot be disregarded, and must be carefully preserved.    It was manifestly the intention of the legislature, in framing the attachment laws of Montana, however, to give some practical advantage by virtue of legal process to the diligent creditor who garnishes a debtor of his debtor, as well as to a creditor who actually attaches tangible property or garnishes a chattel capable of manual delivery.

In *O'Brien* v. *Insurance Co.,* 56 N. Y. 52, an insurance

company was garnished for a debt due a debtor of the plaintiff, and the court said (the statutes of New York being substantially the same as those of Montana) that the effect of the garnishment was to impound the debt—that is to say, to take it into the custody of the court—as effectually as a seizure of chattels capable of manual delivery.

In *North Star Boot and Shoe Co.* v. *Ladd,* (Minn.) 20 N. W. 334, an insurance company owing the defendant was garnished, and the court said: "The garnishment is in effect an attachment of the 'indebtedness' of the garnishee to the defendant.

"Though, technically speaking, it may not give a specific lien upon such indebtedness, its effect in conferring upon the plaintiff a specific right, over and above that of a mere general creditor, to the indebtedness for the payment of his claim, is substantially analogous to that acquired by an attachment of tangible property."

Between the impounding of the debt itself, however, and the acquiring of a specific lien upon the property of the garnishee, there is a marked difference ; at least, in so far as the garnishee's right to deal in good faith with his own property is concerned. Yet, if a debt is impounded—taken into the custody of the court—is it not the duty of the court to preserve, so far as lies in its power, any right of the garnisher as against a subsequent attaching creditor who invokes its process in hostility to any such right ?

The Daily Journal company had assets worth $21,000. It owed the Merchants' National Bank $26,424.15 and the Journal Publishing company $8,939.89. These assets constituted its sole and only means of payment—or, rather, part payment—of said debts. The object of the attachment statutes is to reward diligent creditors. Respondent served notice of its garnishment before the Merchants' National Bank levied its attachment, and used the utmost diligence, apparently, to obtain an actual benefit from this garnishment. Under the statutes of the state respondent was in no position to obtain a judgment against the garnishee until after it had

obtained a judgment against its direct debtor.   But the judg-
ment was not obtained until November 29th, and at that time
all the assets of the garnishee, the Daily Journal company,
had been seized and advertised for sale by the sheriff under
the execution issued on the judgment of the Merchants' Na-
tional Bank against its debtor, obtained on November 22d.
The property was sold on December 1st, and on that day the
respondent commenced this action in equity against appellants,
thereby availing itself of the only practical remedy left to it.
Proceedings supplemental to execution would have been idle
and inadequate under the circumstances.

No direct question arises here, as between the garnishee or
any person dealing with it without notice and the garnisher,
with reference to any specific lien on the former's property
while actually engaged in business.   The Daily Journal com-
pany is a lifeless and hopelessly insolvent corporation.   The
contest is strictly between the two creditors as to its assets,
each claiming by virtue of its attachment.   Even on the
theory that the only right acquired by respondent through its
garnishment was a substitution to the rights of the Journal
Publishing company as against the Daily Journal company
alone, was there any complete substitution?   If there had
been a full and complete substitution, at the very moment the
notice of garnishment was served on the Daily Journal com-
pany, respondent might have sued for the debt due the
Journal Publishing company and taken the tangible property
of the Daily Journal company into legal custody by direct at-
tachment.   As stated, however, respondent was in no posi-
tion to sue the Daily Journal company until November 29th,
when it obtained its judgment, and at that time all the assets
had been advertised for sale, and were actually sold by the
sheriff two days later.   If the service of the notice of gar-
nishment by respondent through the court was not the com-
mencement of a proceeding to reach the assets of its debtor,
then the law permitting the garnishment of a debt is a nullity,
at least so far as this case is concerned.   We are of the
opinion that, as to the Merchants' National Bank, respondent
acquired an inchoate right to a lien as to the property of the

Daily Journal company by virtue of this garnishment. By service of the garnishment respondent took the first legal step necessary to the possible perfection of a lien, and the judgment finally obtained as to the Daily Journal company perfected the lien and the right initiated thereto by the service.

When the Daily Journal was garnished by respondent, it was notified by the court to hold its debt to the Journal Publishing company for the benefit of respondent. It became in a sense the agent of the court for that purpose. Hence the Daily Journal company could not have assigned all its assets for the benefit of its one creditor, the Merchants' National Bank, to the exclusion of respondent's right after the notice of garnishment was served. The law could have been invoked to prevent any such assignment. And yet of the same court which would have restrained any such assignment the Merchants' National Bank demands identically what would have been the result of such an assignment. Unquestionably, however, had the Daily Journal company, after it had been garnished, seen fit to make an assignment for the benefit of both its creditors, it could have done so.

And from this it follows that the right to a lien initiated by respondent by virtue of its garnishment, so far as the Merchants' National Bank is concerned, was only what pro rata interest respondent would have been entitled to receive had a general assignment been made by the Daily Journal company for the common benefit of both its creditors. To this extent alone is respondent entitled to a portion of the $21,000 realized from the sale of the assets of the Daily Journal company—of course, with interest thereon from the time appellants withheld it.

It is held in the decisions of some of the states that a court of equity will not interfere to protect an attachment lien. For such a doctrine we are unable to find any sound reason.

The case is remanded, with directions to the lower court to enter a decree in accordance with the views herein expressed. It is also ordered that each side in this appeal pay its own costs.

Pemberton, C. J., concurs.    Hunt, J., disqualified.