SANDERS *v.* ARMOUR FERTILIZER WORKS ET AL.

No. 106. Submitted February 5, 1934.—Decided April 30, 1934.

*Mr. Thomas D. Gresham* submitted for petitioner.

*Messrs. Charles J. Faulkner, Jr.,* and *Mark McMahon* submitted for Armour Fertilizer Works, respondent.

*Mr. George S. Wright* submitted for National Fire Insurance Co., respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

*New York Life Ins. Co.* v. *Dunlevy* (1916), 241 U.S. 518, exhibited the serious problems encountered by insurance companies when conflicting demands are made by residents of different States. There two individuals, residents of California and Pennsylvania, claimed the surrender value of a life policy. The insurer unsuccessfully sought through interpleader proceedings in Pennsylvania to secure release from all liability.

In order to mitigate the difficulties, Congress, by the Act of February 27, 1917, 39 Stat. 929, authorized insurance companies to file bills of interpleader in District Courts of the United States. An amendment followed

February 25, 1925, 43 Stat. 976, U.S.C.A. 28, § 41 (26). And the Act of May 8, 1926, 44 Stat. 416, U.S.C.A. 28, Supp., § 41 (26) (in the margin [1]), rewrote and amplified the provisions of the earlier enactments.

[1] Act approved May 8, 1926, 44 Stat. 416. Chap. 273—" The district courts of the United States shall have original jurisdiction to entertain and determine suits in equity begun by bills of interpleader duly verified, filed by any casualty company, surety company, insurance company or association or fraternal or beneficial society, and averring that one or more persons who are bona fide claimants against such company, association, or society resides or reside within the territorial jurisdiction of said court; that such company, association, or society has in its custody or possession money or property of the value of $500 or more, or has issued a bond or a policy of insurance or certificate of membership providing for the payment of $500 or more to the obligee or obligees in such bond or as insurance, indemnity, or benefits to a beneficiary, beneficiaries, or the heirs, next of kin, legal representatives, or assignee of the person insured or member; that two or more adverse claimants, citizens of different States, are claiming to be entitled to such money or property or the penalty of such bond, or to such insurance, indemnity, or benefits; that such company, association, or society has deposited such money or property or has paid the amount of such bond or policy into the registry of the court, there to abide the judgment of the court.

" Sec. 2. In all such cases if the policy or certificate is drawn payable to the estate of the insured and has not been assigned in accordance with the terms of the policy or certificate the district court of the district of the residence of the personal representative of the insured shall have jurisdiction of such suit. In case the policy or certificate has been assigned during the life of the insured in accordance with the terms of the policy or certificate, the district court of the district of the residence of the assignee or of his personal representative shall have jurisdiction. In case the policy or certificate is drawn payable to a beneficiary or beneficiaries and there has been no such assignment as aforesaid the jurisdiction shall be in the district court of the district in which the beneficiary or beneficiaries or their personal representatives reside. In case there are claimants of such money or property, or in case there are beneficiaries under any such bond or policy resident in more districts than one, then jurisdiction shall be in the district court in any district in which a

National Fire Insurance Company and Hartford Fire
Insurance Company, Connecticut corporations, under pol-
icies issued to him, became indebted to W. D. Sanders,
resident of the Eastern District of Texas, for loss by fire
(July 3, 1927) of property located therein and part of his
homestead. Texas statutes exempt from execution the
proceeds of such insurance. The indebtedness of the two
insurers respectively was adjusted at $3400.00 and
$4250.00; these sums they agreed to pay. Both Com-
panies were garnished in a foreign attachment proceeding
against Sanders instituted July 18, 1927, in an Illinois
court by Armour Fertilizer Works, a corporation of that
State. This proceeding was based upon his notes which
undertook to waive homestead and exemption rights.
The garnishees admitted liability to Sanders but gave
notice of his claim that the proceeds of the policies were
exempt from garnishment under Texas laws. He did not
appear. After proper publication, judgment was entered
against him September 19, 1927. This sustained the at-
tachment and awarded recovery against him in favor of

beneficiary or the personal representative of a claimant [*sic*] or a de-
ceased claimant or beneficiary resides. Notwithstanding any provision
of Part I of this title to the contrary, said court shall have power to
issue its process for all such claimants and to issue an order of injunc-
tion against each of them, enjoining them from instituting or prosecut-
ing any suit or proceeding in any State court or in any other Federal
court on account of such money or property or on such bond or on
such policy or certificate of membership until the further order of the
court; which process and order of injunction shall be returnable at
such time as the said court or a judge thereof shall determine and
shall be addressed to and served by the United States marshals for the
respective districts wherein said claimants reside or may be found.

" Sec. 3. Said court shall hear and determine the cause and shall
discharge the complainant from further liability; and shall make the
injunction permanent and enter all such other orders and decrees as
may be suitable and proper, and issue all such customary writs as may
be necessary or convenient to carry out and enforce the same."

the Fertilizer Works for the amount due upon the notes— $7,589.81; also directed execution. It is in the margin.[2]

Before final trial in the Illinois court under their answers, as permitted by the Act of May 8, 1926, the Insurance Companies, claiming to be mere stakeholders, filed separate interpleader proceedings .in the District Court, Eastern District of Texas—June 12, 1928. Sanders and Armour Fertilizer Works, alleged adverse claimants, were made defendants. The sums admitted to be

---

[2] " On motion of the plaintiff herein, the defendant, W. D. Sanders, is ruled to appear herein instanter, and thereupon said defendant being called in open court comes not, nor does anyone for said defendant, but herein said defendant makes default, and it appearing to the court that said defendant was duly notified by publication of notice according to law duly notifying said defendant of the pendency of this suit and of the time required of said defendant to appear herein, all of which was a sufficient number of days prior to the time required of said defendant to appear as aforesaid to now require of said defendant that said defendant either appear in this cause at this time or that said defendant suffer judgment by default for want of such appearance, and it further appearing to the court that said defendant is still in default of an appearance herein, it is, on motion of the plaintiff, ordered by the court that default be entered herein against said defendant for want of an appearance.

"And as to the damages sustained by the plaintiff herein, the court hears the evidence contained in the affidavit of plaintiff's claim filed herein and finds therefrom that there is due to the plaintiff the sum of money shown in said affidavit of claim to be due, and assessed the plaintiff's damages at the sum of seven thousand, five hundred eighty-nine and 81/100 dollars ($7,589.81).

" This cause coming on for further proceedings herein, it is considered by the court that the attachment herein be and it hereby is sustained, that the plaintiff have judgment on the default and assessment of damages herein, and that the plaintiff have and recover of and from the defendant, W. D. Sanders, the damages of the plaintiff amounting to the sum. of seven thousand, five hundred eighty-nine and 81/100 ($7,589.81) in form as aforesaid assessed, together with the costs by the plaintiff herein expended and that execution issue therefor."

due under the fire policies were paid into court. An injunction restrained the Armour Fertilizer Works from proceeding further in the Illinois court. Answers by both defendants followed. The causes were consolidated. The District Court awarded the fund to Sanders; the Circuit Court of Appeals held that it should go to Armour Fertilizer Works and reversed the trial court. *National Fire Ins. Co.* v. *Sanders,* 33 F. (2d) 157; *National Fire Ins. Co.* v. *Sanders,* 38 F. (2d) 213. Certiorari, granted upon Sanders's petition, brings the matter here.

The facts are not in dispute. The parties agree that the proceedings in Illinois were according to her statutes; and that under the settled law there Sanders's claim of exemption would have been denied and judgment given against the garnishees if the cause had followed the ordinary course.

The Circuit Court of Appeals overruled objections to the jurisdiction of the District Court and affirmed the latter's authority to consider and determine the rights of the claimants.

It concluded that the Texas statutes did not control; that the Act of May 8, 1926, was intended to afford protection to stakeholders, not to alter the rights of adverse claimants; that the rights of each claimant under the law of the State where they arose should be considered; and that equitable principles commonly accepted in federal courts should be applied.

It held that by the Illinois garnishment the money payable by the Companies to Sanders was sequestrated and that this was good against his claim of exemption; that the lien so obtained followed the fund paid into court. And it directed that the Illinois judgment against him should be satisfied. Upon the first hearing the District Court dismissed the bill for lack of jurisdiction; the Circuit Court of Appeals reversed. Judgment went for San-

ders on the second trial; the Circuit Court of Appeals again reversed.

Objection to jurisdiction of the District Court is now made upon the theory that the defendants are not adverse claimants within the intendment of the interpleader Act since one admits the attached debt is payable primarily to the other and seeks to recover because of his indebtedness to it. The court below adequately answered this contention—

"We think that the facts in this case show that the District Court is mistaken in concluding that the claims of Armour and Sanders are not adverse. Each is claiming the proceeds of the policies to the exclusion of the other. Armour claims by virtue of its Illinois judgment against Sanders and the attachment, and Sanders, while not disputing his obligation to Armour, claims the proceeds, notwithstanding, by virtue of the exemption under the laws of Texas. The statute is remedial and to be liberally construed. It is broad enough to cover any adverse claims against the proceeds of the policies, no matter on what grounds urged. Its terms are not to be interpreted as meaning only adverse claims of those pretending to be beneficiaries of the insured." [38 F. (2d) 214.]

The general purpose and effect of the Act of March 8, 1926, were also well stated below—

"Suits for interpleader in which actions in other courts are enjoined were familiar to equity when the Constitution was adopted [see *Spring* v. *South Carolina Ins. Co.*, 8 Wheat. 268] and are one of the forms of controversy to which, when arising between citizens of different States, the federal judicial power was extended. The Act enlarges the processes of the District Court to cover a broad territory, but otherwise authorizes only an ordinary form of equitable relief. . . . The District Court, of course, is bound on an interpleader to give full faith and credit to

the garnishment proceedings in Illinois. *Cooper* v. *Newell,* 173 U.S. 567. . . . [63 F. (2d) 903.]

" We do not think the filing of the federal interpleader and the payment thereunder of the money into the District Court in Texas operated to bring it under the dominion of Texas law. The applicant for interpleader often has a choice of forum, and he cannot at his will subject the rights of the contesting claimants to one set of laws rather than another. The purpose of the interpleader statute was to give the stakeholder protection, but in nowise to change the rights of the claimants by its operation. The interpleader is a suit in equity, and equitable principles and procedure are the same throughout the federal jurisdiction. The court is to weigh the right or title of each claimant under the law of the State in which it arose, and determine which according to equity is the better. The decision should be the same whether the interpleader is filed in Illinois or in Texas. No one's rights are intended to be altered by paying the fund into the court, which as an impartial neutral is to determine them." [63 F. (2d) 906.]

Assertion by the complainant of entire disinterestedness is essential to a bill of interpleader. *Groves* v. *Sentell,* 153 U.S. 465, 485. " In such a bill it is necessary to aver that the complainant has no interest in the subject-matter of the suit; he must admit title in the claimants and aver that he is indifferent between them, and he cannot seek relief in the premises against either of them." *Killian* v. *Ebbinghaus,* 110 U.S. 568, 571.

The situation here is unlike that presented where one voluntarily subjects himself to its jurisdiction and seeks the aid of a court to enforce his claim. See Story on Conflict of Laws (8th ed.) § 598. The Armour Fertilizer Works asks nothing under any Texas law. Brought into the District Court against its will it was held there against its protest and enjoined from proceeding further in Illinois.

It now claims priority of right and only asks what it would have secured but for the injunction. Under such circumstances, to hold that the statutes of Texas control would destroy rights duly obtained in Illinois; would permit the Insurance Companies by interpleader proceedings to change the positions of defendants; and, in effect, seriously interfere with the impartial adjustment of existing equities. We think Congress had no intention to permit such destruction of acquired rights, if indeed it had power so to do.

By his answer Sanders thus stated his claim to the fund in court—

" That by reason of the fact that the property which was the subject of insurance covered by said insurance policy was the homestead of the defendant, W. D. Sanders, the proceeds of the same which have been tendered into court by the plaintiff herein are exempt to the defendant, W. D. Sanders, under the laws and Constitution of the State of Texas, and his rights therein are superior and prior to the rights of the defendant, Armour Fertilizer Works."

Armour Fertilizer Works asserted—

"On or about the 18th day of July, 1927, it filed a suit in the Municipal Court of Chicago, Cook County, Illinois, styled Armour Fertilizer Works, a corporation, trading as the Planters Fertilizer and Chemical Company, versus W. D. Sanders, being numbered 1,413,423. Said suit was based upon eight promissory notes upon which there was due at that time, including principal, interest and attorney's fees, the sum of $7,589.81. That in connection with said proceedings a writ of attachment and garnishment was issued out of said court, and was, on the 19th day of July, 1927, served upon the plaintiff herein. That the defendant W. D. Sanders was duly cited by publication, in accordance with the laws of the State of Illinois, to appear and answer said suit. Judgment was taken

against the said W. D. Sanders in said suit on September 19, 1927, for the sum of $7,589.81. That said case has not been dismissed as between this defendant and the plaintiff herein, garnishee in that suit. The judgment rendered in said suit is a valid and binding judgment and was procured in accordance with the laws of the State of Illinois, and is a valid judgment against the defendant W. D. Sanders to the extent of the funds impounded by said garnishment. That under the terms of said judgment the said attachment and garnishment against the plaintiff herein and against the defendant W. D. Sanders was sustained and all matters in dispute and with reference to the funds involved herein, were and have been judicially determined by said judgment."

We are not now primarily concerned with rights of a garnishee. The Insurance Companies have paid their debts and obtained complete discharge. Only Sanders and the Armour Fertilizer Works are interested.

He presented claims against Connecticut corporations arising under insurance contracts which he had not undertaken to enforce. These were free from execution in Texas. He might have sued upon them in Illinois; there they were subject to valid attachment.

The Armour Fertilizer Works, an Illinois corporation, presented the judgment against Sanders duly rendered by a court of that State in a proceeding properly begun and prosecuted. It had secured a lien upon the claims against the Insurance Companies. There is no ground for any claim of fraud. True, no final judgment had gone against the garnishees; but as between Sanders and the Fertilizer Works judgment stood against him; also, sequestration of the debts. The precise effect which would be given this preliminary judgment, as against the garnishees, in proceedings involving their rights may be doubtful, but opinions by the Supreme Court of Illinois clearly indicate that Armour Ferlitizer Works secured a lien

upon the Sanders claims; and that, but for the injunction, final valid judgment would have gone against the Insurance Companies, accompanied by a lien good against all the world.

The effect of the proceedings in Illinois as against one occupying the position of Sanders is plain enough under her statutes and decisions. The Illinois courts would have rejected his claim of exemption under the laws of Texas. This view is affirmed here by agreement.

The Illinois rule is that garnishment imposes an inchoate lien subject to defeat by certain subsequent events, none of which are present here. Also, that final judgment in Illinois against the garnishee prior to one in another jurisdiction is conclusive of the rights of the parties. *Lancashire Ins. Co.* v. *Corbetts*, 165 Ill. 592; 46 N.E. 631; *Becker* v. *Illinois Central R. Co.*, 250 Ill. 40; 95 N.E. 42. Also, "that property, real and personal, attached, and funds in the hands of the garnishee, are placed on the same footing,—that is, when attached, such property or funds are appropriated from that time to the payment of a certain class of judgment creditors specifically enumerated." Accordingly, the principal debtor may not assign his claim against the garnished one after the writ has been served upon the latter. *National Bank of America* v. *Indiana Banking Co.*, 114 Ill. 483, 489; 2 N.E. 401. *Martin* v. *Dryden*, 6 Ill. 187, declares—

"Without a levy of the attachment, or the service of a garnishee, the court has no jurisdiction to proceed, by publication of notice, to render any judgment. But, by the seizure of any estate or property of the defendant, or the service by garnishment upon any having estate, property, or effects of his in their hands, the law has laid hold of a fund, which it may condemn, and appropriate to the satisfaction of whatever judgment it may render against the defendant, and thereupon the court proceeds to hear as to the indebtedness. [p. 212] . . .

" These remarks and views apply also to the question of lien. This specific appropriation of property must amount to something as to those who may deal in relation to it; else the defendant could, at any time before judgment, defeat the object of the party by a sale, and possibly, even the jurisdiction of the court. We are of opinion, that the attachment is a lien from the date of the levy, when followed by a judgment, and which will have relation back to it. This doctrine is sanctioned by numerous authorities, which I will not review." [p. 213]

In the circumstances presented the proceedings in Illinois gave to Armour Fertilizer Works a paramount right or superior equity to the proceeds of the policies. To hold that the District Court in Texas could enjoin the Fertilizer Works from proceeding further and then declare that because the last step in the Illinois suit had not been taken Sanders, in some way, became entitled to priority, plainly would be inequitable. Moreover, it would deny to the garnishment proceedings the credit and effect accorded them in the State where taken.

It is unnecessary to enter upon discussion of vexed questions arising out of garnishment proceedings in different jurisdictions. The different views are well stated in Minor on Conflict of Laws, §§ 125, 126, 209. This Court has had occasion to consider the general subject in *Cole* v. *Cunningham*, 133 U.S. 107; *Chicago, R. I. & P. Ry.* v. *Sturm*, 174 U.S. 710; *King* v. *Cross*, 175 U.S. 396; *Harris* v. *Balk*, 198 U.S. 215, 223. The latter says—

" Notice to the debtor (garnishee) of the commencement of the suit, and notice not to pay to his creditor, is all that can be given, whether the garnishee be a mere casual and temporary comer, or a resident of the State where the attachment is laid. His obligation to pay to his creditor is thereby arrested and a lien created upon the debt itself. *Cahoon* v. *Morgan*, 38 Vermont 234, 236; *National Fire Ins. Co.* v. *Chambers*, 53 N.J.Eq. 468, 483.

We can see no reason why the attachment could not be thus laid, provided the creditor of the garnishee could himself sue in that State and its laws permitted the attachment."

Petitioner's argument proceeds upon the erroneous assumption that the money paid into court came under the dominion of Texas law—especially her exemption statutes. This view is not in harmony with the settled law of Illinois that an attachment when levied on the debtor fixes a lien upon the claim and prevents subsequent transfer by the creditor; also, with the reasoning and conclusion in *Chicago, R. I. & P. Ry.* v. *Sturm, supra.*

The latter case—approved in *King* v. *Cross, supra,* and *Harris* v. *Balk, supra*—held that garnishment proceedings pending in Iowa against a claim for wages due by the Railway to a resident of Kansas, and there exempt from execution, constituted good defense when the wage-earner subsequently sued the Railway in Kansas. It approved the doctrine that debts accompany the debtor and may be attached wherever he can be sued by his creditor. Among others, it cited with approval, *National Fire Ins. Co.* v. *Chambers,* 53 N.J.Eq. 468; 32 Atl. 663. It declared that the exemption law was no part of the contract of employment and disapproved the notion that when debts are exempt from execution in the State where created this privilege follows as an incident into other jurisdictions.

In *National Fire Ins. Co.* v. *Chambers, supra,* (an interpleader proceeding—1895) Vice Chancellor Pitney elaborately discussed a situation substantially similar to the one before us. After full review of the authorities, he held that a pending garnishment proceeding properly instituted under the laws of Pennsylvania against indebtedness due to a resident of New Jersey created a lien thereon and gave the attaching creditor superior equity

to one who claimed by transfer from the New Jersey creditor. He applied the familiar principle that he who is first in time is best in right. See also *American Bank* v. *Rollins,* 99 Mass. 313, and *Garity* v. *Gigie,* 130 Mass. 184.

The record does not indicate that any other creditor was interested in the fund impounded in Illinois. The court below rightly gave precedence to the claim of the Fertilizer Works; also properly ruled that the controversy should be terminated by a decree devoting the fund in court to the Illinois judgment against Sanders.

*Affirmed.*

MR. JUSTICE CARDOZO, dissenting.

The federal court in Texas is under a duty, prescribed by statute (R.S. § 905; 28 U.S.C. § 687; *American Surety Co.* v. *Baldwin,* 287 U.S. 156, 166), to give full faith and credit to judicial proceedings in Illinois, including proceedings under writs of garnishment or attachment. *Green* v. *Van Buskirk,* 7 Wall. 139. This does not mean that the proceedings are to have any greater effect than they have by law or usage in the courts of Illinois. *Robertson* v. *Pickrell,* 109 U.S. 608, 610, 611; *Ohio* v. *Chattanooga Boiler Co.,* 289 U.S. 439, 443. The duty is fulfilled if the force and efficacy are the same.

Garnishment in Illinois does not create a lien upon the debt or chose in action subjected to the writ. *Bigelow* v. *Andress,* 31 Ill. 322, 330, 332 (distinguishing *Brashear* v. *West,* 7 Pet. 608, which was based upon a different statute); *Gregg* v. *Savage,* 51 Ill. App. 281, 284, aff'd, 150 Ill. 161; 37 N.E. 312; *McElwee* v. *Wilce,* 80 Ill. App. 338, 342. In substance it is a monition whereby the defendant is apprised that he will be acting at his peril if he makes a *voluntary* payment to the original creditor, the peril consisting in this, that he may have to pay again. *Bigelow* v. *Andress, supra; Gregg* v. *Savage, supra; McElwee* v. *Wilce,*

*supra.*[1]  The writ has no effect upon involuntary payments before the stage of judgment.  Some other attaching creditor, suing the same defendant, may garnish the same debt in another jurisdiction.  The Illinois plaintiff, though the first to have recourse to garnishment, will be postponed to the other plaintiff who is first with execution.  *Lancashire Ins. Co.* v. *Corbetts,* 165 Ill. 592; 46 N.E. 631.  Indeed, the primary creditor, i.e., the debtor of the attaching plaintiff, may bring suit against the garnishee in another jurisdiction, and collect the indebtedness if he wins the race to judgment.  *Becker* v. *Illinois Central R. Co.,* 250 Ill. 40; 95 N.E. 42.[2]  The garnishment suit is *in personam* against the debtor of a debtor (*Harris* v. *Balk,* 198 U.S. 215), and the *res* is not impounded till the compulsion of judgment and execution has caused it to be paid.  Then, but not before, the garnishee will have protection against the hazard of conflicting claims.  Cf. *Harris* v. *Balk, supra; Louisville & N. R. Co.* v. *Deer,* 200 U.S. 176; *B. & O. R. Co.* v. *Hostetter,* 240 U.S. 620.

What has been written does not go beyond the law as declared in Illinois.  The fact is not ignored that there are other jurisdictions in which the process of garnish-

[1] "A garnishment is an attachment of the effects of the debtor in the hands of the garnishee; creating no lien upon anything, but holding the garnishee to a personal liability." *Gregg* v. *Savage, supra.*

[2] The Illinois Supreme Court in that case did, it is true, refer to a garnishment in Missouri as creating an " inchoate " lien, but coupled the description with a ruling that the inchoate lien was not a charge upon a cause of action elsewhere against the same defendant.

" By the service of the garnishee summons in Missouri, Miller [the plaintiff in that action] acquired a contingent or inchoate lien upon the debt, and appellant could not thereafter make a voluntary payment to the appellee; but the right which Miller acquired was dependent upon subsequently acquiring judgment, and that was not accomplished until a judgment had been recovered in this state, where the debt was free from any right or claim that he had." *Becker* v. *Illinois Central R. Co., supra.*

ment receives a different meaning. Sometimes the service of the writ is held to impose upon the debt a fixed and present lien which will have recognition and enforcement everywhere. See, e.g., *Embree* v. *Hanna*, 5 Johns. 100; *Wallace* v. *McConnell*, 13 Pet. 136; *In re Ransford*, 194 Fed. 658, 661; *Chicago, R. I. & P. Ry. Co.* v. *Sturm*, 174 U.S. 710. Sometimes the lien is spoken of as a *quasi* lien or an inchoate one. See e.g., *Focke* v. *Blum*, 82 Tex. 436, 441; 17 S.W. 770; *North Star Boot Co.* v. *Ladd*, 32 Minn. 381, 383; 20 N.W. 334; *In re Ransford, supra.* Cf. *Becker* v. *Illinois Central R. Co., supra.* In the conflict of laws the difference may be important between realities and metaphors, between the organism and the germ. Sometimes the Illinois rule is accepted, and there is said to be no lien, or one that does no more than restrain the garnishee from making voluntary payments. See e.g., *Commercial State Bank* v. *Pierce*,[3] 176 Ia. 722; 158 N.W. 481; *McGarry* v. *Lewis Coal Co.*, 93 Mo. 237; 6 S.W. 81; *Parker* v. *Farr*, 2 Browne (Pa.) 331. Little is to be gained by dilating upon these and like decisions, for they are rooted in local laws or customs. Garnishment and attachment today are statutory remedies. They are what the state creating them declares that they shall be. It is of no moment that Illinois might have made their efficacy greater as long as her legislature and courts have preferred to make them less.

In that state of the law the garnishee would have been remiss if it had failed to shape its course with prudent recognition of conflicting possibilities. Its indebtedness

---

[3] " The garnishment proceedings created no lien upon any property belonging to the original defendant, if any, in the hands of the garnishee. By the garnishment proceedings a personal claim was acquired against the garnishees to the extent of any money or property that might be in their hands at the time the garnishment was served, belonging to the judgment defendant." *Commercial State Bank* v. *Pierce, supra*, at 732.

to Sanders had been subjected to garnishment by the Armour company in Illinois, but Sanders was threatening it with suit in Texas. If Sanders had a judgment there before Armour was in a position to issue execution in Illinois, the garnishment in all likelihood would count for nothing, yet there was a possibility even then of dispute and litigation. Plainly in the race for judgments and its aftermath, there was the risk of expense and embarrassment, if not of double payment.

The garnishee in this dilemma paid the amount of the indebtedness into the registry of the federal court in Texas and had the rival claimants interplead. 28 U.S.C., § 41 (26). The claimant Sanders was entitled to the money unless the Armour company had a lien, and the courts of Illinois had held there was no lien. True there had been a judgment against Sanders, though not against his codefendant, the insurer, but this judgment had been obtained by default after service by publication, not followed by an appearance. It was therefore ineffective as a judgment *in personam*, and in the absence of a lien did not operate *in rem*. *Pennoyer* v. *Neff*, 95 U.S. 714; *New York Life Ins. Co.* v. *Dunlevy*, 241 U.S. 518. The joinder of Sanders had no effect except to give him notice of the garnishment and an opportunity to come in, if he was so minded, and contest the plaintiff's claim. *Harris* v. *Balk, supra,* p. 27. He declined the invitation and preferred to litigate at home. Whatever lien has been adjudged as the result of his default was contingent upon the consummation of proceedings to charge the garnishee, and ended when they lapsed, just as if the suit were discontinued. It did not rise to the rank of a general interest in property, adhering to the debt everywhere and qualifying the title in another jurisdiction. Probably no one would contend that by force of the judgment against Sanders a suit could have been maintained by Armour as *quasi* owner of the policies outside of Illinois. If that was so before

210

the interpleader, it was even more plainly so thereafter. By the express terms of the decree the stakeholder was discharged when the fund was paid into the registry, 38 F. (2d) 212, with the result that there was no longer the possibility of pursuing the garnishee anywhere and thus perfecting the attachment. If some inchoate incumbrance had existed until then, it was then obliterated forever. The fund was free and clear.

The federal court in Texas was thus driven to a choice between a claimant with a foreign attachment which by the law of its creation was of no extraterritorial validity till it had ripened into payment under the compulsion of a judgment, and a claimant whose title to the fund was undisputed unless the lien of the attachment was presently effective. It is not easy to see how there could be any choice but one.

The decree of the Court of Appeals should be reversed and that of the District Court affirmed.

The CHIEF JUSTICE, MR. JUSTICE BRANDEIS, and MR. JUSTICE STONE join in this dissent.

