## SECURITY TRUST & SAVINGS BANK OF SAN DIEGO et al. v. WALSH et al.

### No. 8378.

Circuit Court of Appeals, Ninth Circuit.
July 20, 1937.

See, also, Eagle, Star and British Dominions v. Tadlock (D.C.) 14 F.Supp. 933.

Lindley & Higgins and J. F. DuPaul, all of San Diego, Cal., for appellants.

Lloyd S. Nix, of Los Angeles, Cal., for appellees.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The Eagle, Star and British Dominions, a British corporation, issued a policy of marine insurance upon the vessel Yellowtail in favor of the appellees, Garbutt-Walsh, and appellants Tadlock and Security Trust & Savings Bank of San Diego, as their interests may appear. Tadlock was the owner of the vessel. Appellant Security Trust & Savings Bank held a mortgage on it to secure a debt in excess of $8,000. The appellees Garbutt-Walsh had a claim against the Yellowtail on an account for labor and supplies.

Owing to the perils insured against, the vessel in February, 1936, became a total loss.

On April 3, 1936, the British corporation brought in the court below a suit in interpleader against the beneficiaries and certain other parties, alleging that each of the defendants had made demand upon it for all or some portion of the sum of $7,160, which was the face of the policy less an unpaid premium. In its complaint the insurance company disclaimed any interest in the sum except to· pay it to the person lawfully entitled thereto. There was the usual prayer that the defendants be interpleaded and ordered to settle among themselves their claims to the proceeds of the insurance, which amount was deposited in the registry of the court.

On April 13 the appellants separately answered in the interpleader action and the appellant bank interposed a cross-bill claiming the whole amount of the insurance as mortgagee of the vessel. Appellees moved on May 6th to dismiss the interpleader suit, contending that since there is no diversity of citizenship among the claimants sought to be interpleaded, the jurisdictional requirements are lacking. The trial judge agreed with this contention. See opinion of the court below, Eagle, Star

& British Dominions v. Tadlock et al. (D. C.) 14 F.Supp. 933. Subsequently, however, the appellees appear to have withdrawn their jurisdictional objection, and a "consent" interlocutory decree was entered on May 11th enjoining all defendants in the interpleader suit from pursuing the insurance company further, and directing that the money deposited be retained by the clerk for distribution among the parties as their interests might thereafter appear.

On May 28th the appellees answered the cross-bill of the appellant bank and filed a cross-bill of their own claiming the proceeds of the insurance to the amount of $4,358.06. Their cross-bill is in two counts. One count alleges the performance of labor and the furnishing of supplies for the Yellowtail of an agreed value of $4,858.06. The other alleges that this was the reasonable worth of the labor and supplies. A payment of $500 on the account was admitted, and for the balance appellees claimed a preferred lien as against the insurance money.

Service of this cross-bill was made on appellants on May 29th. On June 12th following, no answer having meanwhile been filed, the trial court, on motion of appellees, ordered that the cross-bill be taken as confessed. Thereupon evidence appears to have been offered and on the same day findings and conclusions were made and a decree entered adjudging appellees to be entitled to receive from the insurance proceeds the sum of $4,358.06, with interest and costs.

Four days later, on June 16th, the appellant bank filed an answer to appellees' cross-bill. This answer, among other things, denied that the labor done and the supplies furnished by the appellees were reasonably worth the sum alleged or any sum in excess of $1,000, and asserted affirmatively that the agreed value thereof was $1,000. On June 18th the appellant Tadlock also answered appellees' cross-bill. His answer is couched in the same terms as that of his coappellant. Both answers were verified.

On June 22d the appellants moved to set aside the decree pro confesso and the judgment. In support of their motion they called attention to their answers on file and presented affidavits of their attorneys to the effect that failure of appellants to answer the cross-bill within the ten day period pre-

scribed by Equity Rule 31, 28 U.S.C.A. following section 723, was occasioned by a misunderstanding of the attorneys as to the scope of that rule, and to a belief on their part that Equity Rules 16 and 12, 28 U.S.C.A. following section 723, provide the time (twenty days) within which a cross-bill must be answered. The trial judge denied the motion and this appeal followed.

Two questions are presented by the appeal. One is the fundamental question of jurisdiction in the court below to entertain the interpleader suit. The other concerns the propriety of the trial court's refusal to set aside the decree pro confesso and the judgment entered thereon.

1. Jurisdiction in this case is not conferred by the Interpleader Act of January 20, 1936 (28 U.S.C.A. § 41 (26). That act gives jurisdiction of suits in equity begun by bills of interpleader only where two or more adverse claimants, citizens of different states, are claiming the fund or property deposited in the registry of the court. Here the adverse claimants are all citizens of California. However, the complainant in interpleader is a British corporation, and the amount in controversy exceeds $3,000. The jurisdictional requirements are thus met under the Act of September 24, 1789 (as amended), R.S. § 563 (as amended), 28 U.S.C.A. § 41 (1), unless the Interpleader Act of 1936 was intended to be exclusive and to circumscribe the provisions of the more general statute.

The original interpleader statute of February 22, 1917 (39 Stat. 925, 28 U.S.C.A. § 41 (26), was a remedy given exclusively to insurance companies and benefit societies. By the act of May 8, 1926 (44 Stat. 416) the provisions of the 1917 statute were rewritten and extended to include casualty and surety companies. On January 20, 1936 (28 U.S.C.A. § 41 (26), the statute was again amended to include bills of interpleader "filed by any person, firm, corporation, association, or society" having possession or custody of money or property of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument for the value of $500 or more or providing for the delivery or payment or loan of money or property of such amount or value, or being under any obligation to the amount of $500 or more, if (i) two or more adverse claimants, citizens of different states, are claiming to be entitled to such money or property, or to

any of the benefits arising by virtue of any of the enumerated obligations; and (ii) the complainant has deposited such money or property or paid the amount or value of such other instrument or obligation into the registry of the court, or has furnished bond to do so. The District Court within whose territorial jurisdiction one or more of such claimants reside is given power to issue its process for all claimants and to enjoin them from proceeding in any state or federal court on account of the obligation of the party bringing the suit.

It seems clear that it was not the intent of the interpleader act, in its original or amended form, to abrogate the right to bring suits in interpleader in the federal courts under the general provisions of 28 U.S.C.A. § 41 (1). That right had long been exercised. Spring & Sons v. South Carolina Insurance Company, 8 Wheat. 268, 5 L.Ed. 614; Killian v. Ebbinghaus, 110 U.S. 568, 571, 4 S.Ct. 232, 28 L.Ed. 246; Groves v. Sentell, 153 U.S. 465, 14 S.Ct. 898, 38 L.Ed. 785. Rather, the statute was intended to afford a remedy in situations where interpleader had theretofore been unavailable because of the impossibility of haling before a court claimants residing beyond its territorial jurisdiction. New York Life Insurance Company v. Dunlevy, 241 U.S. 518, 521, 36 S.Ct. 613, 60 L.Ed. 1140; Sanders v. Armour Fertilizer Works et al., 292 U.S. 190, 194, 54 S.Ct. 677, 78 L.Ed. 1206, 91 A.L.R. 950. The Court of Appeals of the Seventh Circuit in the very recent case of Mallers v. Equitable Life Assur. Soc. of the United States et al., 87 F.(2d) 233, reached a similar conclusion.

Accordingly, we hold that the lower court had jurisdiction to entertain the interpleader suit under the general power conferred by 28 U.S.C.A. § 41 (1).

2. Under Equity Rule 17, 28 U.S.C.A. following section 723, when a bill is taken as confessed, "the court may proceed to a final decree at any time after the expiration of thirty days after the entry of the order pro confesso, and such decree shall be deemed absolute, unless the court shall, at the same term, set aside the same, or enlarge the time for filing the answer, upon cause shown upon motion and affidavit." Had the trial court observed this rule, the entry of the final decree would not have been in order until July 12th. At that time the court would have had before it the verified answers of the appellants

then on file. These answers presented a meritorious defense, at least as to the amount which the appellees were entitled to recover.

The purpose of the thirty-day postponement provided by the rule is to afford the court an opportunity to relieve parties against whom defaults have been taken as the consequence of their excusable neglect. A mistake of the attorney as to the applicable rule limiting the time for answering is not such neglect as would warrant action depriving the litigants of the right to be heard. We can see no prejudice in the delay of a few days in the filing of the answers which the imposition of costs would not amply compensate. While Equity Rule 17, 28 U.S.C.A. following section 723, leaves the matter of setting aside the decree pro confesso within the discretion of the trial court, Koen v. Beardsley (C.C.A.10) 63 F.(2d) 595, 597; Mitchell v. United States (C.C.A.5) 13 F.(2d) 124, 125, the discretion is not to be exercised arbitrarily, but in the furtherance of justice.

The order of the trial court is reversed, with instructions to set aside the decree pro confesso and the final judgment in favor of the appellees, and to proceed to a hearing on the merits.