**ROBERTS et al. v. METROPOLITAN LIFE INS. CO.***

**SMITH v. SAME.**

Nos. 6312, 6349.

Circuit Court of Appeals, Seventh Circuit.

Jan. 5, 1938.

*Writ of certiorari denied 58 S.Ct. 764, 82 L.Ed. —.

Frederick C. Crumpacker, Edwin H. Friedrich, and Jay E. Darlington, all of Hammond, Ind., for Geraldine S. Roberts, A. J. Swanson, and W. J. Glover, Jr.

Donald P. Vail, of Chicago, Ill., for Charles V. Albers, as receiver.

Harry J. Myerson and Ross, Boeger & Robb, all of Chicago, Ill. (Harry J. Myerson and David H. Kraft, both of Chicago, Ill., of counsel), for Ferris Smith.

Before SPARKS and MAJOR, Circuit Judges, and BALTZELL, District Judge.

MAJOR, Circuit Judge.

These appeals, No. 6312 and No. 6349, have heretofore been consolidated and will be treated and disposed of together.

The former is from a decree entered in the court below March 29, 1937, in an action of interpleader filed February 14, 1936, in which the Metropolitan Life Insurance Company was plaintiff and Geraldine S. Roberts, A. J. Swanson, W. J. Glover, Jr., and Charles H. Albers, receiver of Cody Trust Company, a corporation, were defendants.

No. 6349 is from an order denying appellant, Ferris Smith, leave to intervene in the interpleader suit, for the purpose of subjecting the proceeds thereof to the payment of a judgment obtained April 7, 1937, in the municipal court of Chicago in the sum of $1383. The petition for such leave was filed June 2, 1937, and denied July 9, 1937.

Thomas T. Roberts, husband of Geraldine S. Roberts, died October 29, 1935, with a number of life insurance policies in force, including one issued by the Metropolitan Life Insurance Company, in which his wife was named as beneficiary, the proceeds of which amounted to $12,253.37, being those here involved. The insurance company had its principal office in New York City, but was licensed and doing business in Illinois. Defendants, Geraldine S. Roberts, Swanson, and Glover, were citizens and inhabitants of Indiana, while the defendant, Albers, was a citizen and resident of Illinois.

Defendant, Albers, as receiver of Cody Trust Company, on December 16, 1935, obtained a judgment, in the sum of $8,232.59, by confession, against Geraldine S. Roberts. On December 17, 1935, an action by garnishment was commenced against the insurance company based on said judgment. The garnishment writ was delivered to the sheriff on the same day, but was not served upon the agent of the insurance company until December 24, 1935. It is by virtue of this judgment and garnishment that Albers claims the insurance proceeds to the extent necessary to satisfy the same.

Geraldine S. Roberts, after the death of her husband, was in poor health, and W. J. Glover, Jr., undertook to handle for her all her affairs. Defendant A. J. Swanson and his wife were the father and mother, respectively, of Mrs. Roberts, and W. J. Glover, Jr., was her brother-in-law; his wife being a sister. Mrs. Roberts was in California for her health at the time of the trial, and did not appear as a witness. Mrs. Swanson, likewise, either from physical or mental disability, did not appear as a witness.

On December 19, 1935, Mrs. Roberts, together with Mr. and Mrs. Glover, went to New York for the purpose of collecting all the insurance payable to Mrs. Roberts by the Metropolitan Life Insurance Company. The company paid to her the amounts named in two policies aggregating some $55,000, neither of which is here involved, but refused to pay the policy involved on account of an investigation then being conducted. There was prepared in the office of the insurance company an assignment of this policy in which A. J. Swanson and W. J. Glover, Jr., were named as assignees, which was signed by Geraldine S. Roberts and lodged on that date with the insurance company. The assignment recited a consideration of $1 and other good and valuable consideration. It is by reason of this assignment that Swanson and Glover lay claim to the proceeds. It is their theory that the purpose of the assignment was to relieve Mrs. Roberts of the worry incident to the settlement of her affairs and at the same time settle an indebtedness which

she owed her father and mother; while it is the theory of Albers that the assignment was for the purpose of defrauding him as a creditor, and that the assignment was without consideration.

The court, among other things, in its findings of fact, found that one Joseph Hektoen, an attorney for Mrs. Roberts, together with defendants Swanson and Glover, conducted negotiations with George A. Novak, attorney for Albers, concerning a settlement of the note upon which the Albers' judgment was afterwards taken, and that on or about the date the judgment was confessed, Hektoen was advised that judgment had been taken and that garnishment proceedings would be instituted. The court also found that Roberts and Glover, at the time of making the trip to New York, knew that garnishment proceedings were contemplated, if not already commenced, and that the only reason for the making of the assignment was to delay and hinder Albers in the collection of his judgment. It was also found that Mrs. Roberts was indebted to her father, A. J. Swanson, in the sum of $1,600 for money advanced to her by him, and that while there was some evidence of advances to her by her mother, the amount was not shown, and that there was no evidence showing such advances to be a loan.

The contested issues and errors relied on in No. 6312 are: First, Albers' judgment is void because under the law of Illinois a joint warrant of attorney does not authorize confession of a several judgment against the survivor, after death of one of the makers; second, the court below should not have permitted Albers to raise an issue of fraudulent conveyance against the assignees as being a collateral issue outside the field of the interpleader statute, 28 U.S.C.A. § 41(26); third, even if the issue of fraud was properly raised, the facts found do not constitute fraud as a matter of law; and fourth, that the costs (including attorney fees) allowed the insurance company out of the fund should have been taxed against Albers in the final decree.

The question of the validity of Albers' judgment under Illinois law is raised for the first time in this court. Appellants, in their brief, admit "we did not discover it until we were writing this brief." The point was not raised or considered by the court below, neither is it assigned as error, and, in fact, such a contention was not advanced in any manner or form. Under the rule often reiterated, the point is not open to review here. In Pacific States Box & Basket Co. v. White, 296 U.S. 176, on page 186, 56 S.Ct. 159, 164, 80 L.Ed. 138, 101 A.L.R. 853, the court said: "This objection (which involves solely a question of state law) was not made below, was not discussed by the lower court, and is not included in the assignment of errors filed in this court. We have no occasion to consider it. See Rule 27(4) [28 U.S.C.A. following section 354]; Blair v. Oesterlein Mach. Co., 275 U.S. 220, 225, 48 S.Ct. 87, 72 L.Ed. 249, 252; Bradley v. Public Utilities Commission, 289 U.S. 92, 96, 97, 53 S.Ct. 577, 77 L.Ed. 1053, 1056, 1057, 85 A.L.R. 1131."

In Towle v. Pullen, 7 Cir., 238 F. 107, on page 111, where the validity of a lease was in question, this court, through Judge Evans, said: "This contention was not made in the lower court. The sufficiency of the notice terminating the lease was not disputed. It might well be dismissed under the rule that a question not presented to the lower court will not be considered upon appeal. Morrill v. Jones, 106 U.S. 466, 1 S.Ct. 423, 27 L.Ed. 267; Harding v. Giddings, 73 F. 335, 19 C.C.A. 508; Adams v. Shirk, 117 F. 801, 55 C.C.A. 25."

Appellants contend that this error falls within rule 10(4) of this court, "the court may notice a plain error not assigned." Such contention is not tenable.

Appellants' second contested issue, that the court erred in permitting the issue of fraudulent conveyance to be raised against the assignees, presents a problem not free from difficulty, and our attention is called to no authority controlling or even persuasive in the matter. Both sides cite and rely upon the case of Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206, 91 A.L.R. 950, but we are unable to find in that opinion anything determinative of this question. It does seem apparent from this opinion that if a legal assignment had been made by Mrs. Roberts, prior to the service of summons upon the agent of the insurance company, the assignees would have obtained a right superior to that of a judgment creditor. The court, 292 U.S. 190, on page 203, 54 S.Ct. 677, 681, 78 L.Ed. 1206, 91 A.L.R. 950, said: "Accordingly, the principal debtor may not assign his claim against the garnished one after the writ has been served upon the latter. National Bank of

America v. Indiana Banking Co., 114 Ill. 483, 498, 2 N.E. 401; Martin v. Dryden, 6 Ill. [1 Gilman] 187."

In the instant case, the alleged assignment was made prior to the time of the service of summons upon the garnishee. The decisive question must be as to whether the assignment was valid. It should be remembered that, notwithstanding the alleged assignment, the money was still in the hands of the garnishee when summons was served upon its agent. Under such circumstances, there would seem to be no question but what the insurance company was entitled to invoke the protection provided by the interpleader statute. Both Albers and the assignees were necessary parties to that action. They, together with the proceeds of the policy, were brought under the jurisdiction and control of the District Court. Albers was enjoined from pursuing his remedy in the state court, where he, no doubt, could have obtained a judgment against the insurance company. His claim, in the interpleader suit, could not, in our judgment, have been maintained as superior to that of assignees in face of a valid assignment. Likewise, the assignees were not entitled to maintain their claim if founded upon an invalid assignment though made prior to the attaching of a lien in the garnishment action. To say that a court has not the authority to determine the merits of the respective claims under such circumstances, is to impair the effectiveness of the statutory provision. We conclude the court not only had the authority, but the duty, of permitting any issues pertinent to the legality of the assignment. If such, for the lack of consideration, or because of fraud, was ineffectual to transfer to assignees the rights and interests of the assignor, we see no reason why a lien did not attach when service was had upon the agent of the insurance company which had the proceeds in its possession, as though no assignment had been made.

The court below found the assignment was executed for the purpose of defrauding Albers and depriving him of his right to satisfy his judgment from the fund in question. It is said by appellants in their third contention that even if the issue of fraud was properly considered by the court, there was no evidence to sustain such finding. With this contention we do not agree. We find in the record substantial evidence in support of such finding. The attorney for Mrs. Roberts obtained information from the attorney for Albers, which he communicated to her, that judgment would be taken and a garnishment proceeding commenced. Defendant Glover, who was assisting in the management of her affairs, likewise had notice; in fact he participated in the negotations which were carried on between the attorneys for the respective parties. It is claimed this was a privileged communication. This information, however, was obtained from the attorney for Albers, and we do not see how it can come within the inhibition applied to information which an attorney obtains from his client. Whether the information, regarding the judgment and garnishment proceeding, was conveyed to her or not, notice to the attorney as her agent would be binding upon her. U. S. v. Gower, 10 Cir., 71 F.2d 366.

It hardly seems a mere coincidence that three days after the judgment was entered, Mrs. Roberts and her relatives made a trip to New York for the purpose of collecting this insurance. It seems more reasonable to believe the purpose was to obtain the proceeds before the garnishment proceeding could be made effective. Ascertaining that such purpose could not be accomplished, the assignment was made. The assignees were not present; the matter had never been discussed with them; and there seems no good reason why the assignment was made in New York rather than after the return of Mrs. Roberts to her home where it could have been discussed. There is evidence that Mrs. Roberts owed her father $1,600, but there seems to be no competent evidence as to any amount which she owed her mother. True, it is shown, she was given money at various times by her mother; but this does not prove a loan rather than a gift. Neither the mother nor the daughter, the alleged lender or borrower, was a witness, and testimony offered as to statements made by them was properly excluded as clearly in violation of the hearsay rule. Taking into consideration the circumstances under which the assignment was made, the relation of the parties, and a consideration which was wholly inadequate, we think the court below was fully justified in concluding the assignment fraudulent as to the defendant Albers. Therefore, the court correctly decreed that the claim of Albers should be paid first from the interpleader proceeds.

In 6349, the contested issue is whether the court had jurisdiction to authorize appellant to intervene. As before stated, the petition for leave so to do was filed June 2, 1937, while the final decree in the interpleader action was entered March 29, 1937. It seems to be the position of appellant that the fund having been retained in the custody of the court, that jurisdiction is reserved until the fund is finally distributed. Many authorities are cited and quoted from, none of which, in our opinion, sustains such contention. True, courts of equity have been very liberal in permitting interested persons, to intervene and become parties so that complete justice may be done. We know of no authority, however, which permits a person to become a party after a matter has been litigated, a final decree entered, and the term of court adjourned. It would seem to us that the District Court, after an appeal to this court, had no greater or different control or jurisdiction over the case merely because it involves an interpleader action. True, it retains custody of the funds during the pendency and determination of the appeal, but this fact could not authorize the court to permit the intervention of new parties, thereby necessitating another trial. Under such procedure, litigation would be without end. The court properly denied appellant's petition to intervene.

The decrees in 6312 and 6349 are affirmed.