**RAILWAY EXPRESS AGENCY, Inc., v. JONES et al.**

**No. 6854.**

Circuit Court of Appeals, Seventh Circuit.

June 29, 1939.

Rehearing Denied Sept. 18, 1939.

James F. Oates, Jr., Ralph F. Himmelhoch, George Ragland, Jr., and James W. Coultrap, all of Chicago, Ill. (Sidley, McPherson, Austin & Burgess, of Chicago, Ill., of counsel), for appellant.

Edward J. Hess, George M. Crane, Thomas V. Sullivan, Frank E. McAllister, Clement J. Wall, Jr., and William J. Campbell, all of Chicago, Ill., for appellees.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

EVANS, Circuit Judge.

The orders from which this appeal is taken, among other things, denied defendant's, Railway Express Agency, Inc.'s, motion to file its counterclaim, which was a bill in the nature of a bill of interpleader. The propriety of this action is the subject of review by this appeal.

The controversy concerns two legal questions: (a) Plaintiffs' right to maintain a class suit. (b) The Railway Express Agency's right to file, by way of a counterclaim, a bill in the nature of an interpleader as provided for by Section 41 (26), Title 28 U.S.C.A.

While somewhat lengthy, the facts are not complicated, nor in the main, controverted.

Prior to April, 1935, a group of "get-rich-quick" promoters embarked upon a scheme to defraud. The victims were to be the "gullibles" wherever found throughout the United States. The leader of the fraudulent enterprise was Oscar M. Hartzell. The fraud, unfortunately, was more or less successful. The scheme contemplated the presentation of fraudulent, appealing facts to induce the victims to advance money to secure possession of Sir Francis Drake's estate alleged to be in existence and recoverable in England. Promises of great wealth were made to induce individuals to contribute sums ranging from $1 to $485. Some 2500 individuals, residents of about 348 communities in 24 states, parted with money on the basis of these representations before the Federal Government nipped the scheme by starting criminal proceedings against the promoters. The criminal proceedings resulted in an indictment, trial, and conviction of a considerable number of persons, including the leader, Hartzell.

At about the time the indictment was returned, the scheme was working effectively, and the victims' donations were forwarded by collectors—the consignors, by express to three individuals (Kirkendall (now deceased and represented by his widow), Yant, and Short) who are charged with being the lieutenants of said Hartzell. Before delivery to consignees could be

made by the Railway Express, the consignees and Hartzell were incarcerated. The Railway Express, out of a desire to protect itself and the consignors, retained possession of the sums. After the indictment was returned other sums were transported by the Railway Express and possession retained by it. With consent of all parties the packages were opened, and it was found that they contained approximately $24,000 of money (English and United States).

After the aforesaid conviction in the criminal case plaintiff herein, one Jones, a victim, instituted the present alleged class suit for himself and all others similarly situated, to establish his and their rights in and to the funds in the possession of said Railway Express. Subsequently, six other claimants were given leave to join in the suit, and they adopted the allegations of Jones' complaint.

Harrison, the Internal Revenue Collector for the Northern District of Illinois, appeared and asserted a claim and lien on the fund on the theory that the money was consigned to the three individuals for Hartzell whose unpaid income tax then due the United States exceeded $140,000. The names of the individuals who contributed the said $24,000 were in large part ascertained. No single claim equaled $3,000.

The jurisdiction of the Federal Court to entertain Jones, et al.'s suit is challenged on the ground that no claim involved a sum sufficient to give a Federal court jurisdiction, unless the suit be a proper class suit.[1] Defendants also deny the facts present a class suit showing. The defendant, Railway Express, filed an answer and counterclaim, the latter being a bill in the nature of a bill of interpleader. It was denied the relief sought in said counterclaim.

The controverted and determinative questions may be stated as follows: Did the complaint set forth facts which permitted plaintiff to maintain a class suit for himself and all others similarly situated? In other words, do the pleaded facts disclose a basis for a proper class suit? Was the Railway Express Agency within its rights in filing a counterclaim setting forth a cause of action in the nature of a bill of interpleader?

We are not prepared upon the record before us to say with finality that the plaintiff may not maintain this suit for himself and for all others similarly situated. No evidence was received in the District Court on this issue. The orders complained of were made upon the pleadings. Moneys were received in packages, and it is not clear whether any group made a joint shipment of more than $3000. It is not for the court to indulge in speculation as to the facts which, if established, would defeat the class suit theory.

We think it clear that the court had jurisdiction to determine the facts decisive of this class suit question.

While defendant's contention that a class suit may not be maintained where each claimant of the class asserts a separate claim based on individual and separate fraudulent representations, is sound, we are bound, at this stage of the proceedings, by the allegations of the complaint. It is possible, accepting the allegations of the complaint, that there exists a case of joint action upon identical fraud with the resulting total damage exceeding $3,000. It is only after proof has been received on this issue, or admissions made in open court by plaintiff, that the court may, in view of the pleadings, deny plaintiff's right to sue for all; that is, to maintain a class suit.

Moreover, defendant's right to file its counterclaim was not defeated even though plaintiff's right to maintain this class suit be recognized. The Railway Express' right to file its interpleader is not established nor defeated by the merits of plaintiff's claim. The facts upon which defendant's right depends clearly appear.

[1] As to aggregating claims to secure jurisdictional amount, see Longsdorf, Cyclopedia of Federal Procedure, Sec. 61; American Jurisprudence, "Courts," Sec. 217; Troy Bank v. Whitehead Co., 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81; Bullard v. Cisco, 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254, 93 A.L.R. 141; Citizens' Bank v. Cannon, 164 U.S. 319, 17 S.Ct. 89, 41 L.Ed. 451; Walter v. Northeastern R. Co., 147 U.S. 370, 13 S.Ct. 348.

37 L.Ed. 206; Wheless v. St. Louis, 180 U.S. 379, 21 S.Ct. 402, 45 L.Ed. 583; Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817; Scott v. Frazier, 253 U.S. 243, 40 S.Ct. 503, 64 L.Ed. 883; McDaniel v. Traylor, 212 U.S. 428, 29 S.Ct. 343, 53 L.Ed. 584; Woods v. Thompson, 7 Cir., 14 F.2d 951; Jamerson v. Alliance Ins. Co., 7 Cir., 87 F.2d 253.

The adverse claimants lived in different states. The express agency was incorporated in Delaware. Harrison resided in Chicago, Illinois. Jones lived in Iowa. The list of donators covered persons living in seventeen different states. It was not necessary that there be complete diversity of citizenship among all the adverse claimants. Cramer v. Phoenix Mut. Life Ins. Co., 8 Cir., 91 F.2d 141.

The mandatory requirements of the statute are: (a) Two or more adverse claimants; (b) citizens of different states; (c) a fund in possession of party seeking to interplead, to which the two or more adverse claimants are making claim; (d) said sum exceeds $500.

■ All these essential facts were disclosed in the bill of interpleader. In fact, they appear in the several pleadings of all the parties.

The Internal Revenue Collector (Harrison) was claiming a lien upon the money and a right to enforce the lien against the fund. Various persons who had contributed the actual money here involved were asserted to be claimants. Those who had contributed other funds, but not to this specific fund in the possession of the express company, were likewise making claim thereto as victims of the Hartzell fraud. The three parties to whom the funds were consigned were claimants on the theory that they were not acting for Hartzell.

■ The interpleader statute was enacted for the protection of one who makes no claim to money in his possession and who wishes to be relieved of liability, where diverse parties are making adverse claims to the fund.[2]

The Supreme Court stated in the recent case of Texas v. Florida, 306 U.S. 398, 59 S.Ct. 563, 567, 83 L.Ed. 817, 121 A.L.R. 1179, decided March 13, 1939:

"Before the Constitution was adopted a familiar basis for the exercise of the extraordinary powers of courts of equity was the avoidance of the risk of loss ensuing from the demands in separate suits of rival claimants to the same debt or legal duty. Alnete v. Bettam, Cary, 65 (1560); Hackett v. Webb and Willey, Finch 257 (1676); see 9 Viner Abr., 419-440; 1 Spence, The Equitable Jurisdiction of the Court of Chancery, 659; Maclennan, Law of Interpleader, 5 et seq. Since, without the interposition of equity, each claimant in pursuing his remedy in an independent suit might succeed and thus subject the debtor or the fund pursued to multiple liability, equity gave a remedy by way of bill of interpleader, upon the prosecution of which it required the rival claimants to litigate in a single suit their ownership of the asserted claim. A plaintiff need not await actual institution of independent suits; it is enough if he shows that conflicting claims are asserted and that the consequent risk of loss is substantial."

■ Where the possessor of funds can establish the essential and jurisdictional facts prescribed in the statute, his right to relief under this section is absolute.[3] Even were it discretionary with the court to grant or deny interpleader relief, that discretion, on the facts shown in this case, should have been exercised in favor of the Railway Express. This conclusion results from the existence of a duty on the part of the court to prevent the imposition of double liability on one who innocently came into possession of money (or funds) which is claimed by two or more adverse parties and who seeks to have the moneys paid to the proper party and be relieved of all further liability. We are now speaking of one who lawfully came into possession of funds, like an insurance company, a bank, a railroad, or an express company, and who has not lost that lawful and innocent character by laches or acts which would create an estoppel against it.

[2] Interpleader in the U. S. Courts, Chafee, 41 Yale Law Jr. 1134, 42 Yale Law Jr. 41. See also: Mallers v. Equit. Life Assur. Soc., 7 Cir., 87 F.2d 233; Dugas v. American Surety Co., 300 U. S. 414, 57 S.Ct. 515, 81 L.Ed. 720; Connecticut General Life Ins. Co. v. Yaw, D.C., 53 F.2d 684; Metropolitan Life Ins. Co. v. Segaritis, D.C., 20 F.Supp. 739; Dee v. Kansas City Life Ins. Co., 7 Cir., 86 F.2d 813; National Fire Ins. Co. v. Sanders, 5 Cir., 38 F.2d 212; Kansas City Life Ins. Co. v. Adamson, D.C., 24 F.2d 107; Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206, 91 A.L.R. 950.

[3] Roberts v. Metropolitan Life Ins. Co., 7 Cir., 94 F.2d 277; Klaber v. Maryland Casualty Co., 8 Cir., 69 F.2d 934; Connecticut General Life Ins. Co. v. Yaw, D.C., 53 F.2d 684; Dee v. Kansas City Life Ins. Co., 7 Cir., 86 F.2d 813; Penn. Mut. Life Ins. Co. v. Meguire, D.C., 13 F.Supp. 967.

The possibility of future or double liability would not be eliminated if the moneys were paid into court in this Jones suit. That suit can only be successfully maintained as a class suit. If not a class suit, the Federal court has no jurisdiction of it, because no single claim exceeds three thousand dollars. There is at least reason for doubting Jones' ability to establish his right to proceed for others similarly situated, for the reason that the various claims based on fraud and misrepresentations may not be similar and the members of the class may not be similarly situated.

■ If such a situation developed the Railway Express might not be fully protected, even though it paid the money into court.[4] Whether it would be fully protected by a court order and the payment into court, where the court ultimately finds it is without jurisdiction because the suit was not a class suit, and each claimant's claim was less than $3000, we need not decide. The court should not, and under Section 41 (26), Title 28 U.S.C.A., aforesaid, may not subject the party seeking to interplead to such hazards. We are not certain that should a valid class suit be determined to exist in the instant case that complete relief from liability now sought by the Railway Express by means of interpleader could be effected in a simple class suit.

The same applies to the jurisdiction based upon the asserted tax lien of the defendant, Harrison, Collector of Internal Revenue. The disposition of Harrison's claim will depend upon what disposition the court makes respecting Hartzell's right or interest in the fund.

The expenses, as to which the plaintiff is solicitous, will be much greater if the present suit should ultimately fail and the Railway Express should then begin an interpleader suit than if such interpleader proceedings be now sustained.

By proceeding under the counterclaim of the Railway Express the jurisdiction of the court will be unassailable, and the claims of all claimants may be litigated exactly the same as in a proper class suit.

It therefore follows that as a matter of wise discretion, as well as of recognizing a right which the Railway Express possessed absolutely, the court should, after the counterclaim was filed, have proceeded as provided for by the interpleader statute.

The orders appealed from are reversed with directions to permit the filing of the counterclaim and to proceed further in this suit on said counterclaim and under Section 41 (26), aforesaid. Appellant, Railway Express Agency, shall recover its costs on this appeal against appellees, Jones, et al.

---

[4] Wabash R. Co. v. Adelbert College, 208 U.S. 38, 28 S.Ct. 182, 52 L.Ed. 379;

Willcox v. Harriman Securities Corp., D.C., 10 F.Supp. 532.