AMERICAN–HAWAIIAN STEAMSHIP
COMPANY (DEL.), Plaintiff,

v.

BOWRING & COMPANY, General Steamship Corporation, Ltd., Ocean Freighting & Brokerage Corporation and Howell Barnard Smith and George V. Cutler, copartners doing business as Smith & Johnson, Defendants.

United States District Court
S. D. New York.
April 19, 1957.

On Proposals to Limit Issues to Be Tried
Preliminarily May 15, 1957.

Bigham, Englar, Jones & Houston, New York City, for plaintiff. J. Joseph Noble, New York City, of counsel.

Burlingham, Hupper & Kennedy, New York City, for defendants Smith & Johnson and Bowring & Co., Norman M. Barron, Gerard Harrington, Jr., Richard C. Hatch, New York City, of counsel.

Nelson, Healy, Baillie & Burke, New York City, for defendants Ocean Freighting & Brokerage Corp., and General S. S. Corp. Nicholas J. Healy, 3rd, John H. Thoerner, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

This is an action of interpleader brought under the Federal Interpleader Act, 28 U.S.C. §§ 1335, 1397 and 2361

Plaintiff, American-Hawaiian Steamship Company, was the owner of two vessels, the "Panaman" and the "Alaskan," which it sold to the Matson Navigation Company, not a party here. The defendants are ship brokers concerned in the transaction who are grouped into two pairs, one being Bowring & Company and Smith & Johnson as co-brokers, and the other being General Steamship Corporation, Ltd. and Ocean Freighting & Brokerage Corporation as co-brokers.

The complaint alleges that each pair of defendant co-brokers, adversely to the other, claims to be entitled to the sum of $40,000 representing the full brokerage commissions payable by plaintiff on account of the sale of these two vessels to Matson. Plaintiff has deposited this sum in the Registry of the Court and has secured a temporary restraining order enjoining the defendants from commencing any action

against the plaintiff in so far as it may relate to or affect their claims to the $40,000 so deposited until further order of the Court.

Each pair of defendant co-brokers filed an answer which places in issue the plaintiff's right to interpleader. The answer of the General Steamship-Ocean Freighting pair also sets up a counterclaim in which it alleges, among other things, an independent agreement on the part of the plaintiff to pay it commissions of $40,000 on this sale, regardless of what plaintiff's liability for such commissions may be to the Bowring-Smith & Johnson pair. Plaintiff's reply to the counterclaim is, in substance, a general denial.

Plaintiff now moves for an injunction permanently granting the relief temporarily afforded by the restraining order. Both pairs of defendants assert that the temporary restraining order should be lifted rather than made permanent, and the Bowring-Smith & Johnson pair asks that the complaint be dismissed for failure to state a claim cognizable in interpleader.

The facts, as they appear from the affidavits submitted by the various parties on this motion, may be summarized as follows:

In January 1955 Matson asked defendant Bowring to canvass the field for two AP–3 type Victory vessels which it was desirous of purchasing. Bowring got in touch with defendant Smith & Johnson, which had acted on previous occasions for plaintiff American-Hawaiian, the owner of the two AP–3 Victories "Panaman" and "Alaskan", to discuss the availability of these vessels for sale. Bowring and Smith & Johnson agreed to work together on the deal with commissions to be split between them.

Shortly thereafter defendant Ocean Freighting, having learned that the "Alaskan" and "Panaman" were for sale, agreed with General Steamship to work on the deal together on a split commission basis, and the two vessels were then proposed by these co-brokers to Matson.

Some months of proposals, counterproposals, bargaining and negotiation ensued in which the two pairs of cobrokers, acting quite independently of one another, participated in varying degrees. Indeed, plaintiff asserts that the defendant brokers were not the only brokers working to effect the sale.

During the late spring and summer of 1955 proposals by American-Hawaiian to sell the vessels to Italian interests fell through. American-Hawaiian then advised Ocean Freighting that it would consider an offer for sale under American registry.

By this time Matson was aware of the availability of the vessels and American-Hawaiian was aware that Matson was in the market for vessels of this type. By mid-November of 1955 it seemed clear that the views of the prospective buyer and seller as to price were not irreconcilable.

The Ocean Freighting-General Steamship pair alleges that at this point Ocean Freighting was advised by American-Hawaiian that it was almost ready to talk to Matson and asked whether Ocean Freighting would accept a lump payment of $20,000 per vessel if and when the sale to Matson was consummated. The Ocean Freighting pair further alleges that this proposal was made because American-Hawaiian believed that the sale would be facilitated by direct negotiations between the principals, which was an unusual arrangement, that the proposal was approved by the pair, and that American-Hawaiian was so advised.

This proposal forms the basis of the Ocean Freighting-General Steamship claim that plaintiff incurred an independent liability to pay this pair $40,000, whether or not it was the procuring cause of the sale, "when, as and if the sale of the vessels was completed."

The Bowring-Smith & Johnson pair also learned that the principals desired to talk directly. It maintains that Matson agreed to talk directly with American-Hawaiian only upon the proviso that the ground was not cut from under Bowring and Smith & Johnson who were

handling the business. It asserts that American-Hawaiian agreed to this and understood that it was Bowring to which Matson had brought its original inquiry about the availability of such vessels.

The affidavits of the respective parties are contradictory as to whether or not plaintiff, through its officers, (a) asserted that Ocean Freighting was the broker of record, and that it alone would receive notice of any sale, (b) inquired whether Smith & Johnson would be willing to divide the commissions with Ocean Freighting instead of Bowring, or with Bowring to the exclusion of the Ocean Freighting-General Steamship pair, or (c) urged that the commissions be divided three ways, with General Steamship being excluded.

However, it appears that on December 21, 1955 contracts of sale were drawn and plaintiff indicated that a letter from Matson as to who its broker was might be helpful. By letter dated December 28, 1955 Matson stated that it had been primarily dealing with Bowring, although it had had some communication with General Steamship on the subject. The contracts of sale were executed on December 27, 1955, subsequently amended on January 13, 1956, and thereafter consummated. As recently as June 19, 1956, however, plaintiff still asserted that it was not clear as to which broker had represented Matson and as to which pair of co-brokers was entitled to the conceded commissions of $40,000.

In September 1956 plaintiff brought the present action.

Plaintiff asserts that, upon these facts, it is entitled in interpleader, (a) to a permanent injunction restraining defendants from instituting or prosecuting any proceedings affecting its obligation for brokerage commissions on the sale of these two vessels, (b) to be discharged from all liability for any such commissions, and (c) to compel the two pairs of defendants to litigate as between themselves their rights to the commissions in the sum of $40,000 deposited by plaintiff with the Court.

Defendants, on the other hand, contend that plaintiff is not entitled to relief in interpleader upon two grounds. First, they assert that plaintiff is barred from this equitable remedy because it is itself responsible for creating the confusion which led to this situation, and does not come into Court with clean hands. Secondly, defendants claim that plaintiff has an obligation to pay $40,000 as commissions on this sale to the Ocean Freighting-General Steamship pair as alleged in their counterclaim, which is separate and apart from any obligation for commissions which plaintiff may have to the Bowring-Smith & Johnson pair. Defendants therefore maintain that since there are two separate and independent claims for two amounts of $40,000, both of which plaintiff may have to pay, instead of conflicting claims to a single sum of $40,000, plaintiff has failed to establish a basic element of interpleader, viz., the absence of an independent liability to one of the defendants apart from and beyond the conceded stake deposited with the Court.

■ The Judicial Code and Judiciary Revision Act of 1948, June 25, 1948, Chap. 646, 62 Stat. 869, redistributed the provisions of Title 28 U.S.C., 1940 Ed., § 41(26) (often referred to as the Federal Interpleader Act). They now appear in revised form in Title 28 as follows: § 1335 deals with jurisdiction; § 1397 deals with venue; and § 2361 with process and procedure. (See, also, Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C., which supplements the statute.) The mandatory requirements of the statute are that there be two or more adverse claimants, who are citizens of different states or of a state and a foreign country, and who have conflicting claims of the value of $500 or more arising out of money or property in the custody of, or an obligation owing by, the party invoking the remedy. Railway Express Agency, Inc. v. Jones, 7 Cir., 106 F.2d 341.

All the essential elements required by the statute are alleged in the complaint

and, indeed, are not controverted in the papers submitted by the parties.

The defendants do, however, contend that plaintiff should not be entitled to relief in a court of equity since it has allegedly dealt with two sets of brokers without notice to either, has made conflicting representations and concessions to each, and eventually interceded to close the deal directly with the buyer, thus itself creating difficulties of which it now complains.

■ It is well-established that the remedy of interpleader is equitable in nature and is governed by equitable principles. See State of Texas v. State of Florida, 306 U.S. 398, 59 S.Ct. 563, 830, 83 L.Ed. 817; Holcomb v. Aetna Life Insurance Company, 10 Cir., 228 F.2d 75, certiorari denied 350 U.S. 986, 76 S.Ct. 473, 100 L.Ed. 853, rehearing denied 350 U.S. 1016, 76 S.Ct. 657, 100 L.Ed. 875; 2 Baron & Holtzoff, Federal Practice and Procedure, p. 128 (2nd Ed.).

■ The Federal Interpleader Act did not change the equitable nature of interpleader. It merely extended the jurisdiction of the Federal Courts to cover the circumstances which it describes. Danville Building Ass'n of Danville, Ill. v. Gates, D.C.E.D.Ill., 66 F.Supp. 706, and citations at page 709; cf., Austin v. Texas-Ohio Gas Co., 5 Cir., 218 F.2d 739.

■ Thus the equitable doctrines that one seeking equitable relief must do equity and must come into court with clean hands apply in addition to the jurisdictional requirements of the statute. See Austin v. Texas-Ohio Gas Co., supra, at page 745; Standard Surety & Casualty Co. of New York v. Baker, 8 Cir., 105 F.2d 578; Mallers v. Equitable Life Assurance Society, 7 Cir., 87 F.2d 233, certiorari denied 301 U.S. 685, 57 S.Ct. 786, 81 L.Ed. 1343; United States v. Sentinel Fire Ins. Co., 5 Cir., 178 F.2d 217, 222, 233.

■ On the other hand interpleader should be permitted liberally "to relieve parties of the hazards and vexations of conflicting claims" and the Act should be construed and applied liberally. See B. J. Van Ingen & Co. v. Connolly, 3 Cir., 225 F.2d 740, 744; Fidelity & Casualty Co. of New York v. Wilson, D.C.E.D.S.C., 105 F.Supp. 454. Moreover, as noted in Railway Express Agency, Inc., v. Jones, supra, 106 F.2d at page 344:

■ "Where the possessor of funds can establish the essential, and jurisdictional facts prescribed in the statute, his right to relief under this section is absolute."

While it is plain, as the Court in Railway Express Agency observes, that the possessor of the funds must have come by them in a lawful manner and must not have "lost that lawful and innocent character by laches or acts which would create an estoppel against it", nevertheless there must be a clear showing that acts creating an estoppel have occurred before the right to relief under the statute can be barred.

■ It does not appear from the papers before me that the acts of the plaintiff seller in dealing with more than one broker or set of brokers as it did here estops it from seeking the equitable relief of interpleader. While it may be that there was looseness on the plaintiff's part in dealing with these various brokers, particularly in the later stages of the negotiations, nevertheless the brokers were seasoned in this competitive field and no doubt were well aware of the hazards to which they might be subjected. Moreover, there are direct conflicts of fact between the parties as to what representations or promises, if any, were actually made. Defendants have not established that plaintiff showed such callous indifference to their rights or the rights of any of them as would create an estoppel against the plaintiff or bar its right to relief in interpleader. The first ground on which defendants rely is therefore without merit.

Defendants' second contention goes to the merits of plaintiff's cause of action in interpleader. The argument is that

**454**

the Ocean Freighting-General Steamship pair have established that the plaintiff has incurred an independent liability to pay them a lump sum commission of $40,000 regardless of whether plaintiff is liable to Bowring or not and regardless of whether Ocean-General was the procuring cause of the sale. Defendants therefore assert that it has been shown that plaintiff cannot establish an essential element of its right to relief in interpleader, namely, that it has not incurred any liability to either of the defendants independent of liability for the fund on deposit with the court.

■ There is no such specific requirement spelled out in 28 U.S.C. §§ 1335, 1397, 2361. Nevertheless, the better reasoned view seems to be that a party seeking relief in interpleader must show the non-existence of an independent liability to any of the interpleaded parties apart from the liability represented by the fund on deposit. Hurlbut v. Shell Oil Company, D.C.W.D.La., 131 F.Supp. 466; First State Bank of Chariton, Iowa v. Citizens State Bank, D.C.Neb., 10 F.R.D. 424; Equitable Life Insurance Co. of Iowa v. Gilman, D.C.W.D.Mo., 14 F.R.D. 243; cf., Dee v. Kansas City Life Insurance Co., 7 Cir., 86 F.2d 813; 4 Pomeroy's Equity Jurisprudence, § 1326, p. 913. There appears to be no requirement that this must be alleged in the complaint the essential elements of which are set forth in the statute (but cf., Equitable Life Ins. Co. of Iowa v. Gilman, supra, and Dee v. Kansas City Life Ins. Co., supra). However, it is plainly part of the plaintiff's burden of proof. Defendants claim that they have established on this motion that plaintiff cannot sustain its burden on the issue and that they are therefore entitled to judgment in their favor dismissing the interpleader complaint.

■ An action in interpleader is conducted in two stages. First, the Court must determine whether plaintiff is entitled to interplead the defendants and may take evidence for that purpose. The second stage is between the respective defendants on their adverse claims. Girard Trust Co. v. Vance, D.C.E.D.Pa., 5 F.R.D. 109, 114.

■ Plaintiff's right to interpleader cannot be defeated merely because one of the defendants makes allegations by way of defense or counterclaim that plaintiff has incurred an independent liability to him of the nature which has been just discussed. Such allegations merely create issues of fact which the Court must resolve before making its determination in the first stage of the action. Where such issues have been raised the Court must determine whether there is a real and substantial dispute as to the facts, and, if so, the dispute must be resolved upon a trial. Hurlbut v. Shell Oil Company, supra; First State Bank of Chariton, Iowa v. Citizens State Bank, supra.

■ The counterclaim here, also denominated as a separate defense, makes a double-barreled claim. First it includes by reference allegations to the effect that the Ocean Freighting-General Steamship pair was the procuring cause of the sale and entitled to the commission on that basis. This portion of the counterclaim relates to the controversy which is the subject of the complaint and, in effect, is a claim to the $40,000 on deposit adverse to the similar claim of the Bowring-Smith & Johnson pair. These allegations do not constitute a claim for relief against plaintiff on a liability independent of and apart from the claim embraced in its complaint in interpleader. They do not raise an issue between the Ocean Freighting-General Steamship pair and the plaintiff, which would defeat the plaintiff's action in interpleader. They go only to the right of this pair to the $40,000 on deposit.

However, the counterclaim further alleges that the plaintiff is liable to the Ocean Freighting-General Steamship pair upon an independent agreement to pay it a stated commission of $40,000 quite apart from any liability which plaintiff may have to the Bowring-Smith & Johnson pair, and regardless of wheth-

er Ocean Freighting-General Steamship was the procuring cause of the sale or not. This portion of the counterclaim raises issues of fact as to whether or not plaintiff is entitled to interpleader relief, since, taken on its face the pleading controverts an essential element of plaintiff's cause of action.

If the defendants' supporting papers showed that the facts alleged were true beyond dispute and that there were therefore no issues of fact to be tried, it would follow that the defendants were entitled to judgment in their favor dismissing the interpleader complaint. However, defendants make no such showing. There are direct issues of fact drawn by the contradictory statements in the opposing affidavits on this question.

Thus, a trial is necessary as part of the first stage of the proceedings in the interpleader action to resolve these issues and to determine whether or not the plaintiff is entitled to interplead the defendants. If upon such a trial the portion of the counterclaim alleging the independent liability is found to have no merit then the complaint in interpleader will be sustained, the plaintiff may be discharged on just terms, each of the defendant pairs will be required to state its own claims and answer the claims of the other so as to join issue, and in due course proofs will be taken on the respective claims as between the defendants. Reconstruction Finance Corporation v. Aquadro, D.C.W.D.Pa., 7 F.R.D. 406; Westinghouse Electric Corp. v. United Electrical Radio & Machine Workers, D.C.W.D.Pa., 99 F.Supp. 597, affirmed 3 Cir., 194 F.2d 770, certiorari denied 343 U.S. 966, 72 S.Ct. 1060, 96 L.Ed. 1362.

However, should the independent liability of the plaintiff to the Ocean Freighting-General Steamship pair be established upon the preliminary trial, the interpleader complaint would, of course, be dismissed and the Ocean Freighting-General Steamship pair would proceed to judgment on its counterclaim in accordance with its proofs. The Bowring-Smith & Johnson pair would then be free to pursue such remedies against plaintiff on its claim for commissions as it might be advised.

Thus the office of interpleader —which is not so much to protect against double liability as against double vexation in respect to a single liability, Loew's, Inc., v. Hoyt Management Corporation, D.C.S.D.N.Y., 83 F.Supp. 863; Equitable Life Insurance Co. of Iowa v. Gilman, supra—will be fully served.

While the counterclaim does not itself fulfil the requirements of federal jurisdiction under the diversity statute, it is plainly a compulsory counterclaim within the meaning of Rule 13(a) of the Federal Rules of Civil Procedure. It may therefore properly be adjudicated in the federal courts even should the complaint be dismissed since the complaint meets the requirements for Federal jurisdiction. Aberdeen Hosiery Mills Co. v. Kaufman, D.C.S.D.N.Y., 113 F.Supp. 833; 3 Moore, Federal Practice ¶13.19 (2d Ed.1948); West Coast Tanneries, Ltd., v. Anglo-American Hides Co., Inc., D.C.S.D.N.Y., 20 F.R.D. 166; Rosenthal v. Fowler, D.C.S.D.N.Y., 12 F.R.D. 388; 1 Baron & Holtzoff, Federal Practice & Procedure § 392 (2d Ed.).

Accordingly the case will be placed on the trial calendar for a trial of the issues raised by the portion of the counterclaim alleging the independent liability. The temporary restraining order will be continued in force and effect until these issues are determined and such further order as may be appropriate can then be made.

Settle order on notice.

### On Proposals to Limit Issues to Be Tried Preliminarily

The three proposed orders respectively submitted by the parties pursuant to my opinion of April 19, 1957 differ in only one material respect. That submitted by the defendants Bowring-Smith &

Johnson pair provides that a preliminary trial should be had not only of the issues raised by that portion of the counterclaim pleaded in the answer of the Ocean Freighting-General Steamship pair which asserts a separate and independent liability against the plaintiff, but also of issues relating to the claim that plaintiff is barred from relief in interpleader because of the clean hands doctrine. The other two proposed orders limit the issues to be preliminarily tried to those raised by the portion of the counterclaim just referred to.

The Bowring-Smith & Johnson pair seem to be in some doubt as to the meaning of the part of my opinion holding without merit the contention that plaintiff should be barred from relief in interpleader because it did not come into court with clean hands.

Let any such doubts be removed. The conclusion which I reached was predicated on the view that, even if, for purposes of the motion, all conflicts of fact were resolved in favor of defendants, there still was nothing shown which would estop plaintiff or otherwise bar it from a right to relief in interpleader on the equitable grounds contended for. Defendants therefore failed to show that there are any issues to be tried with respect to this contention. No defenses raising such questions are pleaded in the answers of either pair of defendants and no such issues are raised by the pleadings, though it may be that if such defense were made out it might be available even though not pleaded. Libbey-Owens-Ford Glass Co. v. Sylvania Indust. Corp., 2 Cir., 154 F.2d 814, certiorari denied 328 U.S. 859, 66 S.Ct. 1353, 90 L.Ed. 1630.

I have therefore signed the proposed order submitted by the plaintiff which limits the issues to be tried preliminarily to those raised by the portion of the counterclaim of the Ocean Freighting-General Steamship pair which asserts a liability against the plaintiff separate from and independent of the claims of both pairs of defendants to the $40,000 deposited by the plaintiff with the court.