*Western District*

# AUBURN KNITTED FABRICS, INC.
## v.
# GLOBE INDEMNITY COMPANY

Argued: August 20, 1975. Decided: Feb. 10, 1976.

Case tried to *Hayeck, J.,* in the Central District Court
(Worcester).

Present: Gould, P.J.; Cimini, Larkin, J.J.

**Larkin, J.**   This is an action of contract to recover
interest on the proceeds of an insurance policy which
was subject to a Trustee Process Writ. The trial
justice denied a requested ruling by the defendant
which asserted that it was relieved of any obligation
to pay interest on the insurance proceeds because of
the pendency of the trustee process. The defendant
being aggrieved by the denial of the ruling claims
this report to the Appellate Division.

On June 25, 1968, the plaintiff, a manufacturing company (hereinafter Auburn) entered into a "Massachusetts Standard Policy" with the defendant, an insurance and bonding company (hereinafter Globe). Under the terms of the policy which, for purpose of these proceedings, was in full force and effect at all relevant times, Globe agreed to insure Auburn up to $42,000.00 against loss or damage by fire on certain specifically enumerated machines located in the Auburn factory.

On April 6, 1970, the machines which were the subject of the policy were totally destroyed by fire. It appears that shortly after the fire, (although the record does not reflect the exact date), representatives of Auburn and Globe mutually agreed upon the sum of $42,250.00 "as being both the actual cash value of the said machines and the amount of the loss." At no time has Globe suggested that it was not obligated to pay the full face amount of the policy because of the loss of the machines by fire damage at the Auburn factory. As will become relevant hereafter, the proceeds of the policy thus became money unconditionally due Auburn.

While the claim for this loss was being processed, the Gessner Company, (hereinafter Gessner), which had supplied Auburn the said machines, commenced an action against Auburn in Worcester Superior Court[1] by trustee process, and summoned Globe and another as trustees of the defendant. Gessner sought recovery for the balance of the monies due from Auburn for the sale of the insured machines of approximately $32,000.00 and the ad damnum of the Globe writ was $40,000.00.

From the time that Auburn and Globe initially agreed upon the amount of the fire loss under the policy, Auburn, through its counsel, continually

[1] Docket No. 178407, Superior Court for Worcester County

asserted its right to the full face amount of the trusteed insurance proceeds. Alternatively, Auburn consistently demanded immediate payment of that portion of the $42,000.00 which was in excess of the Gessner claim—an amount approximating some $10,000.00. Globe, also through its counsel, consistently took the position "that it was estopped from paying over [any of] said proceeds by the trustee writ served upon it." Consonant with this position, Globe retained sole control and possession of the $42,000.00 concededly due under the policy.

By writ dated September 27, 1971, Auburn commenced the instant action against Globe, seeking recovery of the full $42,000.00 due under its insurance contract.

On January 21, 1974, Gessner's action was settled for $28,000.00. After the filing of relevant documents and by agreement of all parties (Auburn, Globe and Gessner), the $28,000.00 was paid to Gessner by Globe. This payment was made from the proceeds admittedly due on the insurance contract. Thereafter, on June 14, 1974, Globe paid Auburn $14,000.00, the balance of the face value of the policy, less the amount previously paid to Gessner. Auburn accepted this amount while expressly noting that it was not waiving its claim to interest. Globe continued to assert its position that it was not obligated to pay interest because of the trustee process action.

The instant case was submitted to the District Court (after remand from the Superior Court) upon an agreed statement of facts and case stated. As indicated above, the principal issue of the trial was the impact of the Gessner trustee process action on the question of putative interest arguably owing to Auburn on the undisputed proceeds of the policy retained by Globe until it ultimately distributed the final proceeds of the policy on June 14, 1974.

After denying Globe's request for ruling[2] the trial court ruled that Globe was "obligated to the plaintiff, Auburn Knitted Fabrics, Inc., for the payment of interest on the policy proceeds withheld after the issuance of a trustee writ by one Gessner."

In establishing the precise amount of this "obligation," the justice ruled that: "the plaintiff is entitled to interest of Forty-two Thousand Dollars ($42,000) at Six percent (6%) from July 20, 1970 (date of the original writ in action #178407—the Gessner suit) until January 21, 1974, the date that Twenty-eight Thousand Dollars ($28,000) was paid (to Gessner), and on Fourteen Thousand Dollars ($14,000) at Six percent (6%) from January 22, 1974 to June 14, 1974, the date of the final payment (to Auburn)."

The basic question before us is whether an insured is entitled to interest on a sum admittedly and unconditionally due under a policy with his insurer where the relevant proceeds are retained by the insurer after he has been served by trustee writ.

At the outset, one thing is clear, Globe agreed with the Auburn representatives, shortly after the fire, that the full face value of its policy with Auburn was due and payable because of the fire loss. There was no dispute as to the amount that might be payable. There was no suggestion, for example, that the fire was of suspicious origin, perhaps raising an issue as to whether anything would be payable under the policy. These factors were demonstrably absent. Indeed, the record compels the strong inference that had the Gessner trustee writ not been filed, Auburn would have been paid in full by Globe a few months

---

[2] The request for ruling was as follows:
"By reason of the trustee process issued in 1970, and to which the defendant was obligated to answer that it had funds of the plaintiff in the sum of $40,000, the defendant is not obligated to pay interest to the plaintiff on that sum for any period of time prior to its discharge as trustee."

after the April 1970 fire. In sum, so far as Globe was concerned, shortly after the fire, it recognized its contractual insurance obligations with Auburn mandated the payment of the $42,000 face value amount of the policy.

It is true that when the Gessner trustee writ was filed, Globe could not, save at its peril, make this payment to Auburn until there was an adjudication or a voluntary agreement and stipulation between the claimant (Auburn and Gessner) as to whom and in what amounts the proceeds were to be paid. But this dispute did not, nor could Globe rationally have perceived that it did, relieve Globe of its primary obligation to make payment of the full face value under the policy to someone. The fortuitous filing of the trustee writ simply deferred the *time* of such payment and put in issue the *exact* amounts which might be allocated to the putative payees—Auburn and/or Gessner.

Another fact which cannot be disputed is that Globe had the full use, possession and enjoyment of the $42,000, which it agreed was payable under the policy, from the time that the trustee writ was filed in July, 1970 down through its respective payments of $28,000.00 to Gessner on January 21, 1974 and the $14,000.00 balance of the proceeds to Auburn on June 14, 1974.

In challenging the trial justice's denial of its requested ruling, Globe argues that "it is well settled" that a defendant is not obligated to pay interest on funds which are trusteed in an action against the plaintiff. In support of this rule, Globe relies principally upon cases like *Central Trust Co. v. National Biscuit*, 273 Mass. 319 (1930), and *Walker v. Lancashire Insurance Co.*, 188 Mass. 560 (1905).

*Central Trust Company* involved a somewhat complicated factual situation. Originally one Hall entered into a contract to perform trucking services for the

defendant, National Biscuit Company. Later Hall assigned the contract to the plaintiff, Central Trust Company. Still later the Federal Oil Company (apparently a creditor of Hall) brought a Trustee Process suit against Hall (assignor of the contract to Central Trust Co., Trustee) by writ dated May 26, 1923. Trustee service was made on the trust company on the same date and service was effectuated on National Biscuit on May 28, 1923 and again on June 1, 1923.

The defendant trustee National Biscuit filed its answer in due course and raised as a defense a question as to the "doubt of assignment to plaintiff bank" but admitted that it did possess certain funds due to Hall or a valid assignee. Thereupon, with the pleadings in this procedural posture the case remained "inactive" until the fall of 1925 when the trustee National Biscuit Co. (defendant in the subject case) and the trustee Central Trust (plaintiff in the subject case) filed motions seeking to be discharged as trustees. These motions were allowed. Some two years later the subject defendant, National Biscuit paid the plaintiff, Central Trust Company, all the principal sum at issue, the court holding that it need not pay interest on the sum thus paid over.

In the course of its opinion, denying the claim for interest, the court laid strong emphasis on the fact that the original trucking contract did not provide for interest in the event of the type of contingency which ultimately arose:

> "The agreement between the defendant (National Biscuit) and Hall made no provision for the payment of interest, and if interest is payable to him or his assignee because of a failure of the defendant to make payments when due under the contract, it would be by way of damages for failure to pay the money when due. X X X X When interest is not payable by the terms of the contract so as to make it part of the debt, the

debtor is not chargeable with interest as damages for delay in the payment of the debt when such delay is caused by his being summoned as trustee of the creditor, in the absence of fraud, collusion or an unreasonable delay in answering as trustee. X X X X (Here) the facts to which the parties agreed would not justify the conclusion that the defendant had made itself liable by fraud, delay in answering, or by any failure to act in good faith in performing any duty it owed the plaintiff. In *Randall v. Way, supra* at page 508, the Court said: 'The defendants, when summoned as trustees . . . . were bound only to act in good faith towards the parties claiming an interest in the fund; and might fairly and properly leave it to them to protect their own rights.' " (273 Mass at 323).

Even a cursory reading of these somewhat convoluted facts establishes a number of distinctions between the situation before the Court in *Central Trust* and that which confronts us here.

The most obvious distinction derives from the nature of the relationship between the parties out of which a requirement to pay interest is sought to be fixed. On the one hand we have a "garden variety" contractual relationship for the furnishing of trucking services. On the other, in the case at bar there exists, at the least, a quasi fiduciary relationship between an insured and his insurance company. In *Central Trust,* it may fairly be inferred that the trucking contract was the typical "arms length" type of agreement in which the contracting parties were free to bargain to incorporate that language in the agreement which could be anticipated best to protect their respective interests. So, for example, if one of the parties anticipating that a contingency might arise, e.g., the filing of a Trustee Process, justified or not by a creditor, which would delay the expected and orderly payment of funds contemplated by the

agreement, then in that situation, as in the great majority of other "arms-length" commercial agreements, it would have been possible to incorporate into the agreement language appropriate to require the payment of such interest when the contemplated contingency came to pass.

Indeed, the failure so to provide in the agreement in *Central Trust* appears quite significant to the court in addressing the question of whether, in the absence of such language, a duty to pay interest should be imposed on the assignee of the original contracting party. This may be seen in the language excerpted above, and, particularly, that "The agreement between the defendant and Hall made no provision for the payment of interest X X X." Or, again, "When interest is not payable by the terms of the contract, so as to make it a part of the debt, the debtor is not chargeable with interest" absent specifically enumerated circumstances (found to be absent in that case).

It is thus fair to say, crucial to the court's decision in *Central Trust,* was the reasoning that since the contracting party (or his assignee) who there sought to invoke an implied requirement for the payment of interest might have explicity provided for this contingency in the underlying agreement, its failure so to do precluded it from receiving interest absent demonstrable proof of such extraordinary circumstances as fraud, collusion or unreasonable delay.

Contrast these facts with those presented in the instant case. Here, instead of a routine or *ad hoc* trucking agreement, again, presumably negotiated at arms length (notwithstanding apparent differences in economic bargaining power) Auburn entered into a "Massachusetts Standard Policy" with its insurance company. Quite apart from the quasi-fiduciary overtones of the relationship adverted to above, it is highly unlikely that Auburn would have been successful in seeking Globe to modify this "Standard Policy" so as to expressly provide for the payment

to it of interest in the event of a Trustee Process suit which might halt payment to it of proceeds payable under the other terms of the policy. The Massachusetts Standard Policy was drafted by Globe, presumably comported with all relevant Massachusetts regulatory provisions and the likelihood of the policy being changed at the behest of Auburn to specifically provide for the eventuality here at issue was remote at best. Thus, the language in *Central Trust* which suggested that the court would not imply a remedy where it was open to the parties to provide expressly for this contingency by contract has considerably diluted relevance.

Secondly, quite apart from the nature of the relationship between the parties, and the type of contract under consideration, an analysis of the factors contributing to the delay in *Central Trust,* and the responsibility for that delay furnishes additional points of distinction from the case at bar.

It will be remembered that the relevant Trustee Process action in *Central Trust* was commenced in the District Court as contrasted with the Superior Court trustee action in the instant case. As is familiar, District Courts do not have a continuous daily docket list of cases which are routinely called each day by the session clerk as in the Superior Court. In a District Court action either a plaintiff or a defendant has the primary affirmative responsibility of "marking up" a case for trial. However, in the *Central Trust* case, neither the plaintiff nor the defendant took this action. Accordingly, the case was placed on the "inactive list" and remained there for over two years. In this context where neither the plaintiff or defendant's counsel took the minimum steps necessary to mark up the case, it is obvious that it would have been anomalous in the extreme to place the blame for the delay on the trustee—which would have been

the practical result if the plaintiff had been successful in persuading the Court to award interest against the trustee.

Again, by way of contrast, in the instant case, representatives of Auburn, from the earliest stage of the proceeding, made timely and persistent demands on Globe, either for payment in full or, at the least, for the balance of the proceeds which exceeded the amount claimed by Gessner. Globe continually resisted these demands on the basis that the filing of the trustee process by Gessner estopped it from taking any action with respect to the proceeds of the policy which it conceded were payable under the policy as a result of Auburn's fire loss.

Finally, it is pertinent to observe that even the court in *Central Trust* stressed the fact that if the delay in payment had been precipitated by any unreasonable dilatory tactics attributable to the trustee, or if the trustee failed to act "in good faith" in performing any duty it owed to the plaintiff, then the court would have had no difficulty in making an award of interest against the trustee.

In the *Walker* case it was held ". . . . that, when one summoned as trustee is indebted to the principal defendant upon a demand where interest would be recoverable by the principal defendant *only as damages for breach of contract,* interest will not be deemed to accrue during the pendency of the trustee process." (188 Mass. at 565) (emphasis supplied).

Again, this statement must be read in the context of the factual posture of the facts there present. The *Walker* case involved an action on a policy of insurance for a total loss by fire where the defendant-insurer had been trusteed before the liability on the policy had been resolved and where the action[3] was still pending at the time of the decision in the *Walker*

---

[3] A referee's award had been made to the plaintiff before the action had been brought but this award was clearly not "final."

case. In the instant case the facts are clearly disting-uishable. Here the action is one for interest on a sum admittedly and unconditionally due under a policy. In *Walker* the defendant-trustee had not admitted that the proceeds of the policy were due the plaintiff and there had not been an adjudication of the ultimate liability of the defendant trustee. We believe that these facts clearly take the present case out of the *Walker* type of situation.

Moreover, we believe that the court's advertence to the concept of "breach of contract" is central to a proper understanding of the *Walker* case. It is clear that if a trustee has a reasonable defense against the principal defendant, and the delay for which interest is sought to be claimed is caused by the very resolution of that defense, so that when and if the plaintiff ultimately prevails, interest is then added to the sum due (for such breach of contract), then, obviously the Trustee need not pay interest during the pendency of the Trustee process action. If the law were otherwise, then, in the situation posited it might frequently be the case that the plaintiff could enjoy the obviously unwarranted advantage of collecting interest twice.

However, if, on the other hand, the trustee has no *reasonable* defense against the principal defendant and the delay is not caused by the trustee's culpability, *e.g.,* fraud, collusion, unreasonable delay, or the normal time lag inherent in the usual procedures of trustee process, then it would seem only fair and just that the trustee can and should pay the undisputed principal amount into court, much as a stakeholder. Then, in normal course, the Clerk of the relevant court could deposit the same in the channels provided by law, insuring interest to the plaintiff and also protecting the trustee as to the principal amount.

Indeed this is the procedure which Auburn contends should have been adopted by Globe here.

Auburn relies strongly on the contention that Globe, the defendant-insurer, at no time during the

pendency of the litigation resorted to the Massachusetts Interpleader statute, G.L.c. 231, §40, although Globe had early conceded its liability to pay the proceeds of the subject policy, which proceeds, subsequently, were separately claimed by two adverse persons.

Again, it must be stressed that Globe, in effect, conceded that it had no right to the sum of money claimed. Finding itself in this posture, Auburn contends that "in order to avoid the obligation imposed upon it by law, the defendant-insurer had a *duty* to pay the subject funds into court upon an interpleader."

Some support for this contention may be found in an early Massachusetts case, *Davis v. National Life Ins. Co.*, 188 Mass. 299 (1905). There the facts indicated that after an action was brought at law to recover the amount due on a life insurance policy a suit in equity was brought in a Federal court by other claimants of the insurance money in which the plaintiffs and the defendant were made parties. The action at law was thereupon continued for a protracted period until the suit in equity was disposed of by a dismissal. When the law action was finally concluded the plaintiff sought an award of interest which was resisted by the defendant insurance company on the ground that the pendency of the litigation in the Federal Court obviated the company from paying interest on the proceeds of the insurance while the Federal action was pending. The Supreme Judicial Court held that the plaintiffs were entitled to interest from the date of the writ upon the proceeds concededly due under the policy. In the course of its opinion in making the award of interest the court stated:

"There was nothing in any of the judicial proceedings which restrained the defendant from paying the debt according to its terms. No injunction was issued and no stipulation was made as a substitute for an

injunction. Before the commencement of the present action the defendant had notice of the adverse claims of the contending parties and from . . . the date of the writ, to . . ., the time of bringing the bill in equity, it might have filed its petition under (the statutory predecessor of the current Massachusetts interpleader statute), and have relieved itself from liability for interest. At any time afterward it might have paid the money into court if it had thought it best to do so. The agreed facts indicate that it has used the money and received income from it during all the time that the case has been pending." (188 Mass. at 300, 301).

In further support of this position, Auburn relies upon the decision of Chief Judge Adlow for the Appellate Division of the Municipal Court of the City of Boston in the case of *American Guaranty Corp. v. Meeting House Hill Co-op. Bank,* 46 Mass. App. Dec. 120 (1971).

This case involved a mortgage foreclosure and an action to recover excess funds after the foreclosure. In that case the defendant bank did resort to interpleader under G.L.c. 231, §40, but failed to turn the funds over to the court. In holding that the defendant was liable for interest the court stated:

". . . While the interpleader statute . . . makes no mention of interest, the courts have invariably recognized the right of claimants to receive interest on funds held by defendants who have impleaded others, but retained the funds during the pendency of the litigation . . . Having conceded that it had no right to the fund, it was the duty of the bank, if it desired to avoid any obligation for the wrongful detention of the fund, to pay it into court when it filed its answer in interpleader. Having kept the money during the entire period of the litigation, it is only proper and just that it shall pay interest from the time when it acknowledged that the money belonged to

others than itself . . . Aside from the fact that the claimants are titled by statute to interest from the date of the commencement of the action, . . . the Bank has used this fund for its profit over a considerable period. In equity and good conscience it should account in damages to those from whom the money was withheld . . . In this case interest is the measure of such damages." (Citing cases) (46 Mass. App. Dec. at 122, 123).

We recognize that in the case at bar, unlike the facts before the court in the *American Guaranty* case, Globe did not invoke impleader. Rather to use Auburn's characterization, Globe "remained supine content to use money not its own, but to its own use." Notwithstanding this factual distinction we believe that the basic principles articulated in *American Guaranty* have equal relevance to the case at bar. Those principles recognize that interest will be awarded where there is a duty to set aside at interest funds held by the trustee and a breach of that duty *vis a vis* the person to whom these funds are legally obligated. And, as the court said in *American Guaranty:* "In this case interest is the measure of such damages." Thus according deference to what appears to us to be the touchstone of the court's rationale in that case, we believe that Globe which did not interplead should be held no less liable than the defendant in the *American Guaranty* case, which did interplead.

In this regard, Globe, in its brief and at oral argument, acknowledged the general principle that interpleader might be invoked by a trustee who finds itself in the position of a "stakeholder." It concedes that such a stakeholder may petition a court to seek a judicial determination where there are two or more adverse claims to an undisputed amount of money. However, Globe's position is that it was not in the position of a stakeholder as between Gessner and Auburn. In support of this contention, Globe lays emphasis on the fact that it "was summonsed as a

'trustee' and was required to earmark or set aside the funds in question, until discharged as trustee."

The short answer to this contention is supplied in *Allin v. Georgas*, 296 Mass. 70 (1936) where the Supreme Judicial Court stated: "Where one is summoned as a trustee, in trustee process, *he is in the position of a mere stakeholder* and as such entitled to the protection of the court." 296 Mass. at 72 (emphasis supplied).

Again in *Eastern Fur & Skin Co. v .Sternfeld*, 233 Mass. 210 (1919) the court stated at 212:

"The alleged trustee is merely a stakeholder and has no further interest in the proceeding, when once the plaintiff and all the claimants are before the court, except to see that he is put in no worse position by reason of the trustee proceeding than he would have been if it had not been instituted." (Citing *Cavanaugh, Post*—213 Mass. at 384).

It is thus obvious, without getting into a more extended exegesis on the nuances of the "stakeholder" concept that there is ample authority against the position for which Globe contends; namely, that the position of trustee and "stakeholder" are antithetical or mutually exclusive.[4]

We are quick to admit that in this area a review of the leading cases—those relied on by the plaintiff as

---

4 Although the contention is not precisely articulated, it may be that Globe is contending that interpleader was not available to it because of the sometimes invoked prerequisite to equity jurisdiction that a stakeholder could not be liable independently to one of the claimants. See 4 Pomeroy, Equity Jurisprudence § 1326 (5th ed. 1941). Cf. American Motorists Ins. Co. v. Oakley, 172 Misc. 319, 14 N.Y.S. 2d 883 (Supt. Ct. 1939); First State Bank v. Citizens State Bank, 10 F.R.D. 424 (D. Neb. 1950). To the extent that this requirement can be a barrier to interpleader, it should only be invoked in the sound discretion of the trial judge. Chafee, Modernizing Interpleader, 30 Yale L.J. 814, 843 (1921). See e.g., American-Hawaiian S.S. Co. v. Bowning & Co., 150 F.

well as by the defendant—do not, upon analysis, yield up the kind of conceptual symmetry and internal cohesion that one might like. Nor do we think that in this area of the law can one put forth the kind of pervasive and universal principles that should be the hallmark of a jurisprudential system regulating commerce intercourse. Rather, the cases are replete with caveats that, rather than turning on any global *a priori* principles, results should depend upon considerations of "equity and good conscience," and on "that which is right and proper" between the parties. There are frequent interdicts that the question of whether interest should be paid in situations analogous to that presently before the court should take full account of "fundamental fairness" between the parties. Or, as was stated by the Supreme Judicial Court, in dealing with the parties in a trustee process suit: "Ultimate justice between the parties must be considered upon broad and equitable grounds . . ." *Cavanaugh v. Merrimac Hat Co.,* (213 Mass. at 386).

This is true not only in Massachusetts but in other jurisdictions as well. Indeed the genesis of this ap-

---

Supp. 449, 454 (S.D.N.Y. 1957); **Hurlbut v. Shell Oil Co.,** 131 F. Supp. 466, 468 (W.D. La. 1955); 65 Yale L.J. 715 (1956). It has been suggested that the requirement is archaic and should be abolished completely, because the presence or absence of an independent basis of liability does not lessen the stakeholder's need for interpleader to harmonize the inconsistent claims. If judicial economy is a relevant consideration in this area, abolition of any vestige of the independent liability rule would clearly result in a better use of judicial resources. In the present case, when Gessner commenced its Trustee Process action, had Globe interpleaded Auburn then it is likely that all claims might have been settled in the single Superior Court action rather than requiring the dual judicial actions which ultimately came to pass here. In this connection it might be well to recall these familiar words: "The King of Brobdingnag gave it for his opinion that 'whoever could make two ears of corn, or two blades of grass to grow upon a spot of ground where only one grew before, would deserve better of mankind, and do more essential service to his country

proach to situations comparable to that presently before the court is of venerable antiquity. For example in *Sibley v. Equitable Life Assur. Soc.*, 3 N.Y. S. 8 (Sup. Ct. N.Y. 1888) the complaint sought judgment against the defendant insurance company for the amount due under a policy of insurance together with a demand for interest. The facts indicated that the defendant insurance company presented a petition to the court in which it admitted that the amount named in the complaint was due under the policy and that it had been due for over a year; that when the amount had become due the company was "ready and willing to pay the same to the person rightly entitled thereto, but that it is ignorant of the rights of the several parties to the action, and cannot with safety pay the same to any person." At trial, the judge ordered the company to pay the principal amount due under the face of the policy but ruled that because of the company's apparent uncertainty that it should be relieved of the obligation to pay any interest."

On appeal the trial judge's non-allowance of interest was reversed. In the course of its opinion the Appellate Court said:

> "We do not think that the court had power by an order to discharge the defendant from liability to the plaintiff without payment of the amount which was due upon the policy, and interest from the 1st of October, 1887. This interest was, under the complaint in this action, as much a part of the demand of the legal owner of the policy of insurance as the amount required to be paid by the policy. If the company desired to relieve it-

---

than the whole race of politicians put together.' In matters of justice, however, the benefactor is he who makes one lawsuit grow where two grew before." — Chafee, Bills of Peace With Multiple Parties, 45 Harv. L.Rev. 1297 (1932) reprinted in Developments in the Law, Multiparty Litigation in the Federal Courts, 71 Har. L. Rev. 874 (1958): Words worth remembering in an era of burgeoning dockets and of particular relevance here.

self from the obligation to pay interest, it could have commenced an action for an interpleader. Instead of commencing such an action, the company, after having refused to pay the plaintiff, did nothing until it was sued, and in the meantime retained the money. So, if in point of fact the company has an equitable defense against plaintiff's claim for interest, it must remain a party to the action, and set forth such defense by answers."

In more recent years and in diverse jurisdiction, though the cases are not free from doubt, there now appears growing support in the majority of jurisdictions and "the view is generally taken that a custodian of interpleaded funds will be liable for interest thereon through the interpleader period if the funds are not deposited in Court." See 15 ALR 2d 473, 479. Nor is this a rule without a reason. There are policy reasons in support of the modern trend to favor plaintiffs where considerations of equity and good conscience dictate that interest should be paid in situations comparable to the case at bar. In a former day, there was legitimate concern lest the concept of trustee process place an undue burden on the trustee because of difficulties of transportation, communication, lack of access to banking facilities and archaic judicial procedures. However, in the present day, with instantaneous communication, modern financing, ease of travel and ready access to counsel for advice, as well as the vastly simplified procedures facilitating ease of deposit with a court or in an escrow situation, it can be argued persuasively that there no longer exists the need for an overweaning concern for burdening a trustee with the kind of obligation properly reposed upon it in this case.

For all the foregoing reasons we believe that the action of the trial judge in denying the requested ruling was correct. As no error of law has been shown, **an order should be entered dismissing the report.**